THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KYLE W. BEATY, Defendant-Appellee (Kyle W. Beaty, Movant).

Fifth District   No. 5—04—0022

Opinion filed July 16, 2004.

718

David H. Martin, State's Attorney, of Taylorville (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Daniel M. Kirwan and Larry Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE KUEHN delivered the opinion of the court:
■ As a general rule, people are supposed to enjoy total freedom, released from jail and/or conditions of bail, on those occasions where

the State launches interlocutory appeals from suppression orders or adverse evidentiary rulings. *People v. Wells*, 279 Ill. App. 3d 564, 567-68, 664 N.E.2d 660, 663 (1996). Supreme Court Rule 604(a)(3) dictates the following:

> "A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or of a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his continued detention or being held to bail." 188 Ill. 2d R. 604(a)(3).

This rule is based on two simple truths. First, appeals can take a long time to run their course. An interlocutory appeal by the State embraces an indefinite and lengthy delay of an accused's trial, while speedy trial guarantees stand suspended. See 188 Ill. 2d R. 604(a)(4) (the filing of an interlocutory appeal by the State tolls the statutory speedy trial time constraints). Second, a trial judge or an appellate court has entered a ruling favorable to the accused. In the case of interlocutory appeals from suppression orders or adverse evidentiary rulings, the State's ability to successfully proceed has been "substantially impaired." In many cases, the charges would never have been leveled absent the anticipated use of the suppressed evidence.

The weakened posture of the State's case, while the State delays a trial to overturn a presumptively valid ruling, warrants the immediate restoration of complete freedom, absent reasons more compelling than those that support the imposition of bail conditions following the filing of criminal charges.

Kyle W. Beaty (the defendant) is presently confined to the Christian County jail, in lieu of a $2 million bail that he is financially unable to post. He has been there for well over a year, awaiting his trial on multiple charges of aggravated criminal sexual assault. The defendant's right to a speedy trial under Illinois law was indefinitely suspended in early January 2004, when the State filed its notice of appeal and certificate of substantial impairment and commenced this interlocutory appeal. The State seeks to overturn an evidentiary ruling that barred the use of a graphic 1994 videotape that records the defendant and his then-wife engaged in violent sexual intercourse and sodomy. The woman depicted in the videotape, the defendant's now ex-wife, is the alleged victim of the pending sexual assault charges.

We are presented with several issues of first impression. There are certain procedural and jurisdictional questions that we must address before we reach the overriding question that this appeal poses: Should the defendant be held in jail, or have his freedom bound to conditions of bail, during the pendency of this interlocutory appeal by the State?

The State filed this appeal on January 9, 2004. When it did so, it

did not take steps to secure the defendant's concurrent release in compliance with Supreme Court Rule 604(a)(3). The Christian County State's Attorney felt that certain reasons compelled the defendant's continued pretrial detention. Before the State's Attorney could seek judicial approval of his position, the defendant's attorney filed a motion for the defendant's immediate release based upon the call for freedom set forth in Supreme Court Rule 604(a)(3). On the very same day that the State perfected its appeal, Judge David Slater heard the parties' respective positions on the motion. At that hearing, the State's Attorney articulated his reasons for the defendant's continued detention during the appellate review process.

On January 13, 2004, Judge Slater, following the standard set forth in Supreme Court Rule 604(a)(3), denied the defendant's request for release. He found that reasons compelled the defendant's continued detention while the State prosecuted its appeal. The ruling visited further pretrial incarceration upon the defendant. The defendant will remain in jail indefinitely, without the benefit of speedy trial protections, unless we review his jailed status and disagree with Judge Slater. The length of his stay will be measured in part by how long it takes us to process this interlocutory appeal.

The defendant did not immediately pursue a review of Judge Slater's order. Instead, he asked Judge Slater to reconsider bail. On January 30, 2004, his attorney filed an amended motion that set forth all the criteria necessary for the review of bail orders pending a trial. See 188 Ill. 2d R. 604(c) (addressing appeals from bail orders by a defendant before conviction). The motion to reconsider was denied.

The defendant chose not to appeal from that order under Supreme Court Rule 604(c) (188 Ill. 2d R. 604(c)). Instead, he returned to the circuit court with another bail motion. On February 11, 2004, the defendant's attorney appeared before Judge Alan Buck. He argued that the lengthy delay of the trial proceedings, made necessary by the State's appeal, warranted the reconsideration of the bail amount. The defendant also invited as a condition of reasonable bail an order confining him to his mother's house rather than the Christian County jail. Judge Buck denied the motion.

While the defendant pursued his release before two circuit judges, we began processing the State's interlocutory appeal. We created a case file, bearing the docket number of this appeal, No. 5—04—0022, and we appointed the Office of the State Appellate Defender to champion the defendant's interests in this matter.

On February 17, 2004, the defendant filed a notice of appeal, which notice was filed in appeal No. 5—04—0022, the State's interlocutory appeal from the adverse evidentiary ruling made prior to trial.

Seemingly, the defendant wanted a review of the trial court orders that left him imprisoned in the Christian County jail. However, his notice of appeal failed to identify the order from which he appealed, either by date or by nature.

On March 4, 2004, the defendant's appointed appellate counsel filed a motion in this appeal, an appeal initiated by the State, and asked us for leave to amend the defendant's flawed notice of appeal. Appellate counsel wanted the notice of appeal to reflect a desired review of the February 11, 2004, order, a decision that denied the request for a bond reduction and home confinement. The February order was clearly a pretrial bail order.

The State responded. It moved to strike the defendant's notice of appeal. It also moved to dismiss the defendant's attempt to appeal a preconviction bail order within these appellate proceedings. The State maintained that preconviction bail orders were only reviewable under the limited and clearly defined procedures set forth in Supreme Court Rule 604(c).

On March 11, 2004, we ruled on the State's motion, noting, in part, as follows:

> "[T]he State's motion to strike is well-taken. The order denying a motion for bond reduction is not appealable by right in the classic sense. Apart from not being authorized under the rules, a notices [*sic*] of appeal delays any response from the State until the filing of briefs. The purpose of seeking expeditious review of defendant's incarcerated status pending a determination of the State's appeal is defeated if defendant links that process to the State's appeal by filing a notice of appeal or cross-appeal. Thus, the notice of appeal as a jurisdictional vehicle deprives defendant of the very relief he seeks on appeal. Defendant is free to file a proper Supreme Court Rule 604(c) motion for review of bail order or *a motion directly challenging his incarceration in light of Supreme Court Rule 604(a)(3)*, or both." (Emphasis added.)

In light of our invitation, appellate counsel filed a terse motion that requested the defendant's release pending the outcome of the State's appeal. The motion was filed in this appeal—the appeal of an adverse evidentiary ruling initiated by the State. The motion does not seek the review of Judge Slater's January 13, 2004, order, which denied an identical request pursuant to Supreme Court Rule 604(a)(3). The motion does not question or address Judge Slater's findings or seek the review of his conclusion that there are compelling reasons to continue the defendant's detention pending the outcome of this appeal. Counsel has simply filed a freestanding motion for his release based upon the standard promulgated in Supreme Court Rule 604(a)(3) and has asked us to grant the requested relief.

■ On March 25, 2004, trial counsel filed a verified motion for a review of Judge Slater's January 13, 2004, order holding the defendant to bail pending appeal. The request does not comply with the requirements of Supreme Court Rule 604(c), and accordingly, we deny the motion.

On March 26, 2004, the State filed a motion to strike the motion for release pending appeal and to dismiss the defendant's effort to appeal the denial of bail pending trial. The State takes the position that we lack the power to act on either request. That position is as follows.

> There can be no review of an interlocutory order in the absence of a statute or a rule specifically authorizing it. *People v. Woolsey*, 139 Ill. 2d 157, 163, 564 N.E.2d 764, 766 (1990). Since the imposition of a sentence marks the final judgment in a criminal case, any preconviction bail order is interlocutory.

> The rule that sets forth the standard which must be met in order to hold a defendant in jail or to bail during an appeal by the State under Supreme Court Rule 604 does not provide a procedure by which defendants may seek the review of a trial judge's application of that standard. The only rule which establishes a right to review interlocutory bail orders, and which sets forth limited and specific procedures for invoking that right, is Supreme Court Rule 604(c). The defendant has not followed that rule's prerequisites for appellate review.

> The defendant's effort to obtain his release pending the State's appeal has been heard and decided by two different circuit judges. Those judges made their decisions in accordance with the standard promulgated by Rule 604(a)(3). The record supports their determination that the defendant should remain in jail in lieu of posting a $2 million bail, while the State pursues its appeal. The defendant's attempts to obtain the review of that determination are in the nature of an interlocutory appeal in which the defendant, and not the State, is the appellant. There is no authority for a review of the bail question litigated in the circuit court, other than Supreme Court Rule 604(c). The defendant has utterly failed to follow that rule's procedural requirements predicate to a review of bail. *Ergo*, the appellate court lacks jurisdiction to proceed on the bail issue and should strike the defendant's motion for his release.

The State's position overlooks the fundamental nature of the protection that Supreme Court Rule 604(a)(3) confers upon accused individuals. That protection has nothing to do with an accused's right to reasonable bail pending trial or reasonable bail pending an indefinitely postponed trial that awaits the completion of an interlocutory appeal by the State.

Supreme Court Rule 604(a)(3) confers unconditional release and

restores people to the same freedom enjoyed before any charges were initiated. Generally, this freedom will be secured by the same State officials who lodged the charges, requiring no motion, hearing, or disputed order of any kind. On those rare occasions when the State feels that compelling reasons for detention during appeal exist, those reasons will be presented to a judge contemporaneously with the initiation of the interlocutory appeal. That is precisely what happened here.

■ The ruling that flowed from the State's presentation of reasons compelling the defendant's continued detention during its appeal was not a bail order. It was an order denying the unconditional freedom that Supreme Court Rule 604(a)(3) bestows in the absence of a showing that reasons compel otherwise. Orders appealable under Supreme Court Rule 604(c)(1)—orders "setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof" (188 Ill. 2d R. 604(c)(1))—are different from an order applying the standard set forth in Supreme Court Rule 604(a)(3)—an order which denies the unconditional release pending an appeal that Supreme Court Rule 604(a)(3) normally affords.

Our power to address pleas for freedom under Supreme Court Rule 604(a)(3) is a part of the power we acquire when the State invokes Supreme Court Rule 604 in order to seek our interlocutory review of an adverse ruling made by a circuit judge. It is the same power that we possess when the State petitions the Illinois Supreme Court in an attempt to undo one of our rulings. Obviously, a determination of whether compelling circumstances justify detention in the face of a standard that favors freedom is not a determination confined to circuit judges. Supreme Court Rule 604(a)(3) requires that determination when the State petitions the supreme court for leave to appeal an adverse ruling from the appellate court under Supreme Court Rule 315 (177 Ill. 2d R. 315). In that circumstance, the determination would be made by us or the supreme court.

For these reasons, we believe that we have jurisdiction to address the defendant's motion for release under Supreme Court Rule 604(a)(3). We deny the State's motion to strike that request.

The State expresses its concern over our independent determination of the need for continued detention pending interlocutory appeals by the State. It questions how we could possibly make the factual determinations necessary to conclude that reasons either do or do not compel continued detention.

■ While there may be cases where the record does not allow for an informed decision about the existence of reasons to compel further detention, this is not such a case. The record sufficiently demonstrates the reasons that *compel* detention pending the outcome of this appeal.

We believe continued pretrial incarceration is warranted under the circumstances presented.

The current state of the evidence in this case is an important ingredient in reaching our decision. The outcome of this appeal will not determine the outcome of the prosecution. Therefore, in addressing the question of the defendant's release, we need not examine the merits of the State's underlying appeal. The merits of the State's appeal would be a similarly important part to our decisionmaking, if we felt that the appeal's outcome controlled the outcome of the prosecution.

The State will still have plenty of evidence to proceed to a verdict, in the event that its effort here proves unsuccessful. Moreover, that remaining evidence clearly points to the likelihood of a successful prosecution, even if the State cannot show the 1994 videotape to the jury. The likelihood of a conviction on the evidence that the State currently possesses provides a sound foundation for the State's position that enhances the compelling nature of the reasons set forth to justify continued detention. In the absence of such a likelihood, or in the absence of a clearly meritorious appeal, none of the reasons tendered by the State to justify continued detention would necessarily, standing alone, compel continued detention.

The risk of flight, coupled with legitimate safety concerns for the defendant's sole accuser, supported by the likelihood of a conviction on the evidence currently possessed by the State, compels detention pending appeal.

The defendant faces mandatory life imprisonment if convicted. The severe mandatory penalty that awaits the defendant in the event of a conviction, coupled with the current strength of the State's case against the defendant, presents a heightened risk of flight. If unconditionally released, the defendant could easily disappear, without the risk of an enhanced penalty, either in forfeiture of money or in future freedom. In fact, flight would seem the smart choice, given the odds of a conviction that would spell certain lifelong confinement behind prison walls.

Standing alone, a past criminal history is not necessarily a reason to compel further detention pending appeal. However, this defendant's criminal history conveys a penchant for violent assaults against his ex-wife. It is a propensity that the State has been authorized to establish during the defendant's trial. It is also a propensity that bodes real potential for future violence against his ex-wife, should the defendant gain his freedom.

The State seeks the use of the 1994 videotape because it feels that the tape depicts a proudly videotaped, unreported sexual assault com-

mitted against the defendant's then 22-year-old wife. While the videotape's contents might be open to some interpretation,[1] from its description in this record and from the trial judge's ruling, the tape's contents obviously portray a violent manner to the sexual behavior in which the defendant and his then-wife engaged.

The sexual assaults alleged in this case occurred just two weeks after the defendant was released from prison. His prison term was punishment meted out on a plea of guilt to sexually assaulting his then ex-wife in 1998. The State possesses the defendant's admission that he sexually assaulted his ex-wife again because he was angry about his recently completed five-year stint for the earlier assault.

In 1996, the defendant was convicted of aggravated battery. Again, the victim of his violence was the same person, his then-wife. The defendant threw a punch that shattered her nose. She was trying to escape the family residence with two minor children in tow at the time. The State will be permitted to present evidence of this prior bad act, in order to corroborate the alleged victim's claim that the defendant offered her a Hobson's choice prior to sexually assaulting her.

The defendant's ex-wife now claims that her prior experiences with the defendant's violence provided her with palpable images to contemplate when the defendant gave her the "choice" in 2003 of a beating or sexual abuse. The State possesses the defendant's admission that he articulated such an option prior to his sexual acts.

---

[1]Originally, the State agreed with the defendant that the videotape was irrelevant to questions presented in this case. When the defendant's attorney presented the State with the ex-wife's written recantation of accusations she had leveled against the defendant in 1998, one of the prior offenses the State intended to use to show the defendant's propensity, the State changed its position with regard to the videotape. Judge John Coady examined the videotape's contents. He found them to be so highly inflammatory that a presentation to a jury would overshadow evidence to support the commission of the crimes charged. Judge Coady felt that the videotape harbored the potential to control the trial's outcome, regardless of what the other evidence did or did not establish. He balanced its probative value against its prejudicial effect and, exercising his discretion, banned the use of the videotape at the defendant's trial.

Interestingly, Judge Coady recognized the potential for a different point of view regarding the videotape. He expressed concern that someone else might view the videotape's contents as evidence that advanced a defense of consent. Prior to ruling, he had the defendant view the videotape. He made sure that the defendant, and his attorney, wanted the tape excluded, before he excluded it.

726

It is fairly easy to draw safety concerns for the defendant's ex-wife, based upon the defendant's long-standing criminal history and his known propensities toward her.

Indeed, the State advances a decidedly stern argument in this regard. In addition to references to the defendant's criminal history beyond the crimes mentioned, the State's argument references two facts that its evidence will support. A telephone message machine at the home of the defendant's mother recorded a call from the defendant, shortly after the sexual assaults are alleged to have occurred. When investigating officers had the defendant's brother play the recorded messages for them, they heard the message left by the defendant. The message solicited his mother to lie for him and to supply him with a false alibi for the night. Incredibly, the defendant's brother managed to erase the recording before the police could retrieve it.

Here is the State's argument.

> "The picture painted is not a pretty one from the defendant's standpoint. The client his appellate counsel would have this court release into his mother's custody is a man who has demonstrated his propensity for brutal sexual violence—a propensity which has spawned retaliatory crimes against his present accuser, a man who has demonstrated low regard for the laws of this State in general, a man who has twice acquired a firearm in violation of the law, a man confident that one of his principal community ties, his mother, is willing to shield him from apprehension[ ] and whose brother is willing to assist. Defendant raped his ex-wife in retaliation for the few years of imprisonment the State meted out for his raping her on a previous occasion. If he is released, what weapon will this scofflaw now use to punish the woman perceived responsible for his facing incarceration from which he will never be released?"

We doubt that the State's question will ever find an answer. The defendant's motion for release pending this appeal is denied.

Motion denied.

WELCH and DONOVAN, JJ., concur.