2015 IL App (1st) 140036
No. 1-14-0036
Opinion filed December 31, 2015

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08 CR 20482 |
| LAMARR MAXEY, | ) ) | The Honorable Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Lamarr Maxey pled guilty to attempted aggravated robbery and

was sentenced to 11 years with the Illinois Department of Corrections (IDOC).

¶ 2     On this direct appeal, defendant asks us to vacate as void a prior bond order. Specifically, defendant argues that the trial court erroneously placed him on bond during a prior appeal by the State, although Illinois Supreme Court Rule 604(a)(3) provides that "[a] defendant shall not be held in jail or to bail during the pendency of an appeal by the State." Ill. S. Ct. R. 604(a)(3) (eff. Dec. 11, 2014).[1]  As a result of this order, defendant received consecutive sentences in another case.  Section 5-8-4(d)(8) of the Unified Code of Corrections (Code) provides that, "[i]f a person charged with a felony commits a separate felony while on pretrial release *** then the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." 730 ILCS 5/5-8-4 (West 2014).

¶ 3     Defendant asks us to declare the prior bond order void and to vacate the consecutive sentences entered in the other case, which is not before us on this appeal.  For the following reasons, we do not find defendant's arguments on this issue persuasive.

¶ 4     In the alternative, defendant asks us to allow him to withdraw his guilty plea in the case at bar, because it was allegedly based on a misunderstanding that his guilty plea would not prevent him from subsequently challenging the prior bond

---

[1] Illinois Supreme Court Rule 604 was amended effective December 3, 2015.  However, this amendment had no effect on the sections which we quote in this opinion.

on appeal. Again, for the reasons explained below, we are not persuaded by defendant's argument.

¶ 5 Lastly, defendant asks us to correct the mittimus to reflect the 1,045 days of credit served. In response, the State asks us to reduce the days of credit to 951 days. Pursuant to our supreme court's decision issued last month in *People v. Castleberry*, 2015 IL 116916, we must deny the State's request. We do order the mittimus corrected to reflect the trial court's order.

¶ 6                                   BACKGROUND

¶ 7 Since the issue before us is purely procedural, we provide here the procedural history of the case below.

¶ 8 After being indicted for attempt aggravated robbery, defendant filed a motion to quash arrest and suppress evidence. After an evidentiary hearing, the trial court granted defendant's motion on October 7, 2009. On November 4, 2009, the parties appeared in court and the State indicated its intent to file, on the same day, a certificate of substantial impairment and notice of appeal. Defense counsel "object[ed] to the filing of that" and also "ask[ed] for an appeal bond because *** this [could] take[] two years while it pends." The parties then agreed to a continuance to November 10, 2009. As it stated it would do, the State filed both a notice of appeal and a certificate of substantial impairment on November 4, 2009.

¶ 9     On November 10, 2009, the parties agreed to another short continuance, and appeared again on November 24, 2009. The State argued that the trial court lacked jurisdiction to reconsider its ruling on defendant's motion, and that the appeal had to proceed. Defense counsel responded: "I would ask you to set that $10,000 I-bond,[2] as this case could linger for several years before ultimately being resolved in Mr. Maxey's favor and it is punitive to hold him in custody while waiting that verdict."

¶ 10    Defense counsel then paraphrased Illinois Supreme Court Rule 604(a)(3) (eff. Dec. 11, 2014), stating: "The defendant shall not be held in jail or to bail during pending [*sic*] a pendency of an appeal by the State or of a petition or appeal by the State under Rule 315 A, unless there are compelling reasons for his or her continued detention or being held for bail."

¶ 11    The assistant State's Attorney (ASA) then responded: "I think I gave you compelling reasons." However, the trial court held: "I don't think so." The court then instructed defense counsel: "Draft the order." To which, defense counsel responded: "Yes, sir."

¶ 12    The half-sheet entry for November 24, 2009, states: "PD (Vern) State Files Certificate of Impairment nunc pro tunc 11/01/09[.] [B]ail set at $10,000 I Bond

---

[2]An I-bond is a recognizance bond.

4

# 6698202 off call."  An order, dated November 24, 2009, also stated:  "Bail set at $10,000 I Bond # 6698202."

¶ 13    While the State's appeal was pending, defendant was arrested in another case (No. 11 CR 07414-01). On May 27, 2011, this court reversed the trial court's grant of defendant's motion to quash and suppress evidence and remanded for further proceedings in the case on appeal before us (No. 08 CR 20482). *People v. Maxey*, 2011 IL App (1st) 100011.  On December 20, 2012, after a bench trial, defendant was found guilty in case No. 11 CR 07414-01 of aggravated fleeing and eluding and residential burglary.[3]  The sentencing was scheduled for a later date.

¶ 14    Prior to defendant's sentencing in case No. 11 CR 07414-01, the parties appeared in court in case No. 08 CR 20482 on January 10, 2013, and defense counsel filed a motion to vacate the bond in case No. 08 CR 20482, which had been entered several years earlier in 2009.  The trial court denied the motion, holding:  "I do not think that Rule 604 *** requires, quote, compelling reasons, unquote, for someone to be held on an I-bond or on a recognizance bond."

¶ 15    The trial court further stated:  "And pending resolution of this case, if it comes up to argue this again, should he be found guilty of this offense, you can make whatever argument you see fit on his behalf, but I agree you are entitled

---

[3] Case No. 11 CR 07414-01 is currently pending on appeal before another division of this court in appeal No. 1-13-698.

to have a decision now in order to make whatever decisions you want to make hereafter."

¶ 16     Then the parties proceeded to discuss the pending plea offer from the State and defendant's pending suppression motion. The trial court described the State's plea offer of 11 years as "extremely generous," in light of the 6 to 30 year sentencing range and defendant's lengthy criminal history. Defense counsel stated that defendant wanted to know if they could proceed on the suppression motion and then, if it was denied, could he still accept the State's plea offer of 11 years. The court responded:  "If he wants the 11, he can have the 11 right now.  If he wishes to reject the 11, and you're absolutely entitled to reject the 11, but we are going to fish or cut bait, which means we're going to make a decision."

¶ 17     The parties went off the record and then the following colloquy between defendant and the trial court ensued on the record:

"DEFENDANT:  Your Honor, I just feel like, you know, the caselaw and everything, you know, based on Supreme Court Rule 604(a)(3), you know, I was supposed to be released unconditionally.  I mean, bail is bail, you know.

And as [the other trial judge] stated on the 24th of November when he let me go, he said–[ASA] asked a compelling reason.  He said I don't

6

think so. I mean, you read the transcript. You know, I'm saying absent a compelling reason, you know, I was entitled to unconditional release under [Rule] 604(a)(3). And I feel like–you know, I understand that I was out on bond and–I mean, I was out on bond, but if I got my unconditional release, I wouldn't have–you know, I wouldn't be out on bond. So that's why I just don't feel like, you know, a consecutive sentence is in order, you know, based on the fact that I was out on a bond that I shouldn't have been out on, you know.

THE COURT: I appreciate that, that is the effect of the ruling. I got that, Mr. Maxey. I didn't not take that seriously. I understand fully its importance–

DEFENDANT: I want to also–

THE COURT: Go ahead.

DEFENDANT: I also want to ask, you know, by me pleading guilty, is this issue moot now? I mean, can I under [*sic*] blame error of the Supreme Court Rules–I mean, am I able to bring this back up? Because I feel this is a plain error that I was released on bond in the first place. I mean, the Supreme Court Rule, it's clear. They say unless compelling reasons, and the burden was on the State to submit these compelling reasons. The Judge ruled. And you read the transcript. He said no

compelling reason, I don't think so.  I mean, those are the exact four words he spoke, I don't think so. [ASA] asked him, your Honor, I think, based on the transcripts, she said I offered compelling reasons.  [The other trial judge] pointblank said I don't think so.

So I'm saying there were no compelling reasons at the time.  So based upon no compelling reasons at the time, why am I out on bond if the rule is clear, you know?  Not to be held to bail or held pending, you know, unless a compelling reason–compelling reasons exist.  It's just the plain language of the statute–I mean, the rule suggests that I wasn't supposed to be held–I wasn't supposed to be held to bail.

THE COURT:  I'm not going to give you legal advice about what course you want to take.  If you plead guilty, if I accept the plea of guilty and make a finding that it is voluntarily, freely and knowingly made, I anticipate I will go along with the sentencing recommendation that I made, which was 11 years in the Illinois Department of Corrections for this offense.

I am not making it consecutive to any other sentence, because there is no other sentence that you're serving at this time.  So I can't say that this sentence will be consecutive to some other sentence.  I don't do that. You're not serving some other sentence at this time that I will say this

sentence will be concurrent or this sentence will be consecutive. I'm just going to sentence you today.

DEFENDANT: Oh, okay. One more thing. By me raising this motion here in your courtroom, that doesn't prevent me from raising it also in [case No. 11 CR 07414-01], does it?

THE COURT: I'm not giving you any legal advice. What do you want to do?

DEFENDANT: I'm going to sign the paper.

THE COURT: Excuse me?

DEFENDANT: I will sign the paper.

THE COURT: You mean you wish to plead guilty?

DEFENDANT: Yes."

¶ 18    Defendant then pled guilty. Prior to sentencing, the trial court asked defendant if there was "[a]nything [he] wished to say," and defendant replied: "I would just like to reiterate, you know, I feel like I shouldn't have been held to bond on this case. It was an error for me to be put out on bond. Basically, I was eligible for unconditional release." The trial court then sentenced defendant to 11 years with IDOC, plus three years of mandatory supervised release, with credit for 1,044 days served. The trial court then informed defendant of his

appeal rights, stating that he had to first file in the trial court a written motion within 30 days if he wished to withdraw his guilty plea.

¶ 19    Thus, defendant pled guilty and was sentenced in the case at bar on January 10, 2013.  Less than 30 days later, on February 5, 2013, defendant filed a *pro se* motion to withdraw his guilty plea in case no. 08 CR 20482.  Defendant raised a number of issues, including that he received ineffective assistance of counsel "in that he was mislead [*sic*] into believing that he would be able to appeal various pre-trial rulings to the appellate court regardless of his guilty plea which he knows 'now' to be untrue."  He also stated that his counsel was "ineffective when on January 10, 2015, he sought before *** the circuit court Defendant's Motion to Vacate Prior Bond knowing very well that he had requested Nov. 24, 2009 this bond due to his lack of knowledge and his apprehension of Supreme Court Rule 604(a)(3) on the same day (see court transcript for that day). He was also ineffective *** in that he could have raised my issue about defendant's bond pursuant to Ill. Supreme Court Rule 604(c) Appeals From Bail Orders by Defendant Before Conviction which then would have been appealable to the Appellate Ct."

¶ 20    On February 27, 2013, in case No. 11 CR 07414-01, defendant was sentenced to 20 years and 3 years, respectively, for residential burglary and aggravated fleeing and eluding.  These two sentences ran concurrently to each

other but consecutive to the 11 year sentence imposed in the case at bar (No. 08 CR 20482).

¶ 21     In response to defendant's motion to vacate his plea, the trial court appointed counsel, and appointed counsel filed a supplemental motion on September 5, 2013.  The supplemental motion made several claims, including that defendant's guilty plea was based on a misapprehension of the law, in that he did not understand that his guilty plea would bar him from appealing the denial of his motion to vacate his prior bond.  On October 3, 2015, counsel filed an "Addendum to Supplemental Motion to Vacate Guilty Plea," which added claims that are not at issue on this appeal.

¶ 22     On December 17, 2013, the trial court denied defendant's motion to vacate his plea, finding that his plea was voluntarily made.  The court observed:

"THE COURT:  There is nothing that the Court said or did that would have led Mr. Maxey to believe he had a right to appeal the propriety of rulings in that regard.

And as the State points out, and as I think my questions alluded to earlier, the question of whether Mr. Maxey was on bond or not at the time he committed the second offense was completely, totally, absolutely irrelevant then and irrelevant now because this was the first case that got

resolved. So the issue of whether he was on bond or not is simply not an [*sic*] justiciable issue for this Court to resolve, not then and not now."

¶ 23    The trial court also granted defendant's motion to correct the mittimus, to which the State had no objection.  The court granted defendant an additional day's credit, for a total of 1,045 days considered served, which was entered *nunc pro tunc* to the date of the guilty plea.

¶ 24    On December 17, 2013, defendant filed a notice of appeal in the case at bar (No. 08 CR 20482) appealing the trial court's denial of defendant's motion to withdraw his guilty plea.

¶ 25    The notice of appeal in case No. 11 CR 07414-01 was filed on March 9, 2013. Over two years later, on October 13, 2015, the State filed a motion in that appeal to consolidate it with the appeal now before us.  On October 19, 2015, a different division of this court denied the State's motion to consolidate.  On November 12, 2015, that division heard oral argument, but it has not yet issued a decision.

¶ 26                              ANALYSIS

¶ 27     On this direct appeal, defendant raises three claims:  (1) that the prior order granting defendant an I-bond during a prior appeal must be vacated as void; (2) that the trial court should have allowed defendant to withdraw his guilty plea because he did not understand that his guilty plea would preclude

him from his challenging his bond on appeal; and (3) that the mittiums should be corrected. For the reasons explained below, we order the mittimus corrected. However, we do not find defendant's other arguments persuasive and we affirm the defendant's judgment and conviction.

¶ 28                              I. The Bond Order

¶ 29      First, defendant asks us to vacate as void the bond order issued during a prior appeal in this case, and to vacate the consecutive sentences that were imposed in a different case as a result of the bond order.

¶ 30      In response, the State argues that the sole procedure for vacating a bond order is set forth in Supreme Court Rule 604, and the time for appealing the order has passed. The rule specifically provides that an appeal "may be taken at any time *before conviction*" (emphasis added) (Ill. S. Ct. R. 604(c) (eff. Dec. 11, 2014)), and there is no dispute that defendant did not appeal the bond prior to conviction.

¶ 31      The issue of whether the applicable Supreme Court Rules permit the appeal in this case is a question of statutory interpretation, which we review *de novo*. *In re Michael D.*, 2015 IL 119178, ¶ 9. "The same rules of construction apply to both" statutes and Supreme Court Rules. *In re Michael D.*, 2015 IL 119178, ¶ 9. Our primary objective is to give effect to the drafters' intent, which is best indicated by the plain language of the statue. *In re Michael D.*, 2015 IL 119178,

13

¶ 9. *De novo* review means that the reviewing court performs the same analysis that a trial judge would perform. *A.M. Realty Western L.L.C. v. MSMC Realty L.L.C.*, 2012 IL App (1st) 121183, ¶ 37.

¶ 32     Supreme Court Rule 604(c) provides in relevant part:

"(1) *Appealability of Order With Respect to Bail*.  Before conviction a defendant may appeal to the Appellate Court from an order setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof.  As a prerequisite to appeal the defendant shall first present to the trial court a written motion for the relief to be sought on appeal. ***

(2) *Procedure*.  The appeal may be taken at any time before conviction by filing a verified motion for review in the Appellate Court. ***" Ill. S. Ct. R. 604(c) (eff. Dec. 11, 2014).

¶ 33     There is also no dispute that defendant did not utilize Rule 604(c)'s procedure for appealing an order setting "bail or the conditions thereof." Ill. S. Ct. R. 604(c) (eff. Dec. 11, 2014). Defendant's primary argument to this court is that the I-bond in this case constituted "bail" in violation of another part of Rule 604, namely subsection (a)(3), which prohibits holding defendant "to bail during the pendency of an appeal by the State."  Ill. S. Ct. R. 604(a)(3) (eff. Dec. 11, 2014).  If defendant is correct and the I-bond constituted "bail" within

the meaning of Rule 604(a)(3), then this same rule also required him to file his motion for review "before conviction" (Ill. S. Ct. R. 604(c) (eff. Dec. 11, 2014)). If defendant is not correct and the I-bond did not constitute "bail" as the State contends, then his claim fails on the merits, because he then would not have been "held to bail" in violation of the rule. Ill. S. Ct. R. 604(a)(3) (eff. Dec. 11, 2014). Either way, his claim fails. See *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 322 (2011) (" '[W]here the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary.' " (quoting *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959))); *Chultem v. Ticor Title Insurance Co.*, 2015 IL App (1st) 140808, ¶ 33 (" 'use of the same words or phrases in different sections of [a] statute should be given a consistent meaning' " (quoting *Clardy v. Rapistan Division of Lear Siegler, Inc.*, 254 Ill. App. 3d 1066, 1070 (1993))).

¶ 34    In response, defendant argues, first, that "[t]he State contradicts itself on this point, since it claims elsewhere that the bond determination did not set 'bail.' [Citation.] The State then faults [defendant] for not pursuing an avenue that, by the State's logic, was unavailable to him." However, as we explained above, it is the defendant's logic which bars his claim. If we agree with defendant that

the I-bond did, in fact, constitute bail for purposes of Rule 604, then we must also conclude that his claim was not timely pursuant to Rule 604.

¶ 35    Defendant cites in support *People v. Beaty*, 351 Ill. App. 3d 717, 723 (2004), which stated, without any citation or support, that:  "Orders appealable under Supreme Court Rule 604(c)(1)–orders 'setting, modifying, revoking, denying, or refusing to modify bail or the condition thereof' (188 Ill. 2d R. 604(c)(1))–are different from an order applying the standard set forth in Supreme Court Rule 604(a)(3)–an order which denies the unconditional release pending an appeal that Supreme Court Rule normally affords."  Even if we found this unsupported dicta persuasive, its language does not apply to the case at bar. Unlike *Beaty*, this is not a case where the trial court "denie[d]" defendant "the unconditional release" which he sought.  *Beaty*, 351 Ill. App. 3d at 723; see also *Beaty*, 351 Ill. App. 3d at 720 (defense counsel filed a motion for defendant's immediate release which the trial court denied based on a finding of compelling reasons). By contrast, in the case at bar, the trial court *granted* defendant's request for an I-bond and directed *defense counsel* to draft the order.

¶ 36     In addition, *Beaty* was in a different procedural posture from the case at bar.  In *Beaty*, the defendant sought to appeal his bond order as part of the State's interlocutory appeal from the adverse evidentiary ruling (*Beaty*, 351 Ill. App. 3d at 720), and the *Beaty* court permitted the defendant to do that (*Beaty*,

351 Ill. App. 3d at 723).  By contrast, in the case at bar, defendant asks us to consider the validity of his bond when the appeal to which it pertained is now over.  For all these reasons, we do not find *Beaty* apposite to our case.

¶ 37    Defendant argues further that, even if the procedure outlined in Rule 604(c) applied to his claim, "nothing in the rules for direct appeals bars challenges to bond determinations," and defendant cites in support the Illinois Supreme Court's decision in *People v. Bailey*, 167 Ill. 2d 210, 237-38 (1995), where the court did discuss a bail issue on direct appeal.  However, in *Bailey*, the supreme court acknowledged that, although the defendant's claims about the trial court's denial of bail may have been both untimely under Rule 604 and moot, it decided to address his claims because addressing them would advance the "public interest" in clarifying whether a particular statue was constitutional. *Bailey*, 167 Ill. 2d at 238.  In the case at bar, defendant makes no argument that deciding his claim will advance the public interest.

¶ 38    The State claims that, since defendant failed to follow the procedure outlined in Rule 604(c), we lack jurisdiction to consider his claim.  However, we are not barred from considering an order that was a necessary step to the order at issue before us (*Filliung v. Adams*, 387 Ill. App. 3d 40, 49 (2008)); and our supreme court in *Bailey* exercised its discretion to hear defendant's bail issue, even though it may have been untimely under Illinois Supreme Court Rule 604(c).

*Bailey*, 167 Ill. 2d at 238. Thus, we conclude that we have jurisdiction. However, we are not persuaded, as our supreme court was in *Bailey*, that there is good reason to consider defendant's untimely claim in this appeal. See *Bailey*, 167 Ill. 2d at 238. Defendant's ultimate goal is to vacate the consecutive sentences ordered in another case—not in the case at bar. In essence, we are being asked to render an advisory opinion, which would have no impact in the case at bar, but which could effect the sentences in another case currently pending on direct appeal. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) (as a general rule, Illinois courts do not render advisory opinions or consider issues where the outcome of the case will not be affected regardless of how those issues are decided). Under these unusual circumstances, we do not find good cause in this case to overlook the untimeliness of defendant's motion to vacate his bond, which was filed several years late. Our decision here, however, does not bind the hands of another court considering different cases or claims.

¶ 39    Defendant argues that the bond order is void and may be attacked at any time. Previously our supreme court recognized a "type of voidness challenge" which was "a challenge to a sentence that did not conform to the applicable sentencing statute." *People v. Thompson*, 2015 IL 118151, ¶ 33. "This type of challenge [was] based on the 'void sentence rule' from *People v. Arna*, 168 Ill. 2d 107, 113 (1995), holding that a sentence that does not conform to a statutory

requirement is void." *Thompson*, 2015 IL 118151, ¶ 33. However, last month and after the briefs were filed in this appeal,[4] our supreme court "abolished the void sentence rule." *Thompson*, 2015 IL 118151, ¶ 33 (citing *People v. Castleberry*, 2015 IL 116916, ¶ 19). "Consequently, that type of challenge is no longer valid." *Thompson*, 2015 IL 118151, ¶ 33.

¶ 40                                    II. Withdraw Guilty Plea

¶ 41      In the alternative, defendant asks this court to allow him to withdraw his guilty plea because it was based on a misunderstanding. He claims that he did not understand that his plea could preclude him from challenging the validity of his prior bond on this appeal.

¶ 42      "Leave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice under the facts involved." *People v. Spriggle*, 358 Ill. App. 3d 447, 450 (2005); see also *People v. Hughes*, 2012 IL 112817, ¶ 32 ("A defendant has no absolute right to withdraw his guilty plea."). Generally, the decision whether to allow a defendant to withdraw a guilty plea pursuant to Supreme Court Rule 604(d) is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Hughes*, 2012 IL 112817, ¶ 32. "An abuse of discretion occurs only when the

_____

[4] The reply brief in the instant appeal was filed November 10, 2015; and our supreme court's opinion in *Castleberry*, 2015 IL 116916, was issued just nine days later, on November 19, 2015.

trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 43    A defendant may seek to withdraw his or her guilty plea on the grounds that the plea was entered based on a misapprehension of fact or law, or if there is a doubt of the guilt of the accused and the ends of justice would better be served by submitting the case to a trial. *Hughes*, 2012 IL 112817, ¶ 32; *Spriggle*, 358 Ill. App. 3d at 450-51. A defendant's misapprehension of the law is well recognized as a reason for vacating a guilty plea. *People v. Belcher*, 199 Ill. 2d 378, 383 (2002). " ' In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea.' " *Spriggle*, 358 Ill. App. 3d at 451 (quoting *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993)). "The defendant bears the burden of proving that his or her mistaken impression was objectively reasonable under the circumstances existing *at the time of the plea*." (Emphasis in original.) *Spriggle*, 358 Ill. App. 3d at 451.

¶ 44    In the case at bar, the record simply does not bear out defendant's claim that he was suffering from a misunderstanding. The record shows that, during the plea proceeding and prior to the plea, defendant expressed the issue, quite

thoughtfully and articulately. He asked the court whether a guilty plea would preclude him from pursuing the bond issue in the future, and the court replied that it would not provide legal advice. Defendant then asked specifically: "By me raising this motion here in your courtroom, that doesn't prevent me from raising it in [case No. 11 CR 07414-01], does it?" Again, the trial court repeated: "I'm not giving you any legal advice." Defendant, however, decided to proceed without this knowledge in order to preserve the benefit of his bargain with the State. The record simply does not bear out defendant's claim that he was suffering from a misunderstanding, and thus we cannot find that the trial court abused its discretion.

¶ 45                                    III. The Mittimus

¶ 46       On appeal, defendant asks us to correct the mittimus to reflect the 1,045 days served ordered by the trial court. " 'Although a written order of the circuit court is evidence of the judgment of the circuit court, the trial judge's oral pronouncement is the judgment of the court.' " *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87 (quoting *People v. Whalum*, 2012 IL App (1st) 110959, ¶ 41). " ' "When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." ' " *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87 (quoting *Whalum*, 2012 IL App (1st) 110959, ¶ 41 (quoting *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993))). Thus, we order the

mittimus corrected to reflect the oral pronouncement of the trial court of 1,045 days served.

¶ 47    On appeal, the State asks us to reduce the number of days served to 951 days served. In effect, the State is appealing the sentencing order, which Illinois Supreme Court Rules do not permit it to do.  Last month, our supreme court held in *Castleberry*:  "Illinois Supreme Court Rule 604(a) sets forth with specificity those instances where the State may appeal in a criminal case.  The rule does not permit the State to appeal a sentencing order." *Castleberry*, 2015 IL 116916, ¶ 21 (discussing Ill. S. Ct. R. 604(a) (eff. July 1, 2006)). "[B]ecause the rule does not authorize the appeal of sentencing orders, it follows that the State could not have cross-appealed in the appellate court on this issue, 'since a reviewing court acquires not greater jurisdiction on cross-appeal than it could on appeal.' " *Castleberry*, 2015 IL 116916, ¶ 21 (quoting *People v. Farmer*, 165 Ill. 2d 194, 200 (1995)).

¶ 48    In *Castleberry*, as in the case at bar, the State "did not file either an appeal or a cross-appeal in the appellate court but 'simply responded to a claim raised by defendant.' " *Castleberry*, 2015 IL 116916, ¶ 22 (quoting the State's brief in *Castleberry*). In *Castleberry*, the State argued that "the appellate court could, therefore, properly address its argument." *Castleberry*, 2015 IL 116916, ¶ 22.

The supreme court responded: "This is incorrect." *Castleberry*, 2015 IL 116916, ¶ 22. The court explained:

"As the appellee in the appellate court, the State could, without filing a cross-appeal, raise any argument of record in support of the circuit court's judgment. [Citations.] However, an appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.' [Citation.]

The State's argument *** was not brought to sustain the judgment of the circuit court. It was instead, a new and different issue brought with a view to 'lessening the rights' of defendant. The State's argument was a *de facto* cross-appeal *** and, as such, was impermissible." *Castleberry*, 2015 IL 116916, ¶¶ 22-23.

¶ 49　　As a result, the State lacked the authority to ask for a reduction in the credit for days served which would have, in effect, appealed the trial court's sentencing order. See also *Castleberry*, 2015 IL 116916, ¶ 24 ("the authority granted under Rule 615(b)" to the appellate courts to modify sentences "is limited to 'reduc[ing] the punishment imposed by the trial court' " (quoting Ill.

S. Ct. R. 615(b)(4))).

¶ 50                                     CONCLUSION

¶ 51        For the foregoing reasons, we affirm the judgment and conviction. However, we order the mittimus corrected to reflect the 1,045 days of credit ordered by the trial court.

¶ 52        Affirmed; mittimus corrected.