NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240969-U

NO. 4-24-0969

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 24, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ogle County |
| SARAH L. SAFRANEK, | ) | No. 21CF91 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Redington, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding compelling reasons existed, pursuant to
Illinois Supreme Court Rule 604(a)(3) (eff. Apr. 15, 2024), to support defendant's
continued detention during the pendency of the State's interlocutory appeal.

¶ 2    In April 2021, the State charged defendant, Sarah L. Safranek, with five counts of

first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2020)) and one count of aggravated battery

to a child (*id.* § 12-3.05(b)(1)) in connection with the death of her seven-year-old son, N.B., in

February 2021. The trial court set bail at $2 million and permitted defendant's release if she paid

10%. Defendant did not pay and remained in custody. In October 2023, defendant filed a petition

for pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725

ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan.

1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff.

Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52

(setting the Act's effective date as September 18, 2023). In response, the State filed a petition to deny pretrial release, which the court granted.

¶ 3        Subsequently, the trial court ruled on various motions *in limine*. The State initiated an interlocutory appeal of the court's adverse rulings pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Apr. 15, 2024). (That appeal has been docketed as appellate court case No. 4-24-0967.) Defendant accordingly demanded her immediate release pursuant to Rule 604(a)(3). The court declined to release defendant pending the State's interlocutory appeal. Defendant appeals, arguing the State did not meet its burden of proving compelling reasons to warrant her continued detention. For the reasons that follow, we affirm.

¶ 4                                I. BACKGROUND

¶ 5                              A. Defendant's Charges

¶ 6        On April 21, 2021, the State charged defendant by information with five counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2020)) and one count of aggravated battery to a child (*id.* § 12-3.05(b)(1)) in connection with the death of her seven-year-old son, N.B., on February 17, 2021. As to the murder counts, the State alleged defendant suffocated N.B., causing his death and knowing her acts would cause his death (or the strong probability thereof). The State further alleged defendant's acts were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and were committed in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life by unlawful means. As for the count of aggravated battery to a child, the State alleged defendant committed a battery upon N.B., which caused him to suffer a ruptured liver. The same day, the trial court found probable cause to support the charges. The following day, the court set bail at $2 million, with the condition defendant would be released if she paid 10%. Defendant did not pay and remained in custody.

¶ 7      B. Defendant's Petition for Pretrial Release and the State's

Petition to Deny Pretrial Release

¶ 8      On October 24, 2023, defendant filed a petition for pretrial release pursuant to the Act. Defendant asserted that appropriate conditions of pretrial release, such as home confinement, electronic monitoring, and prohibitions against contacting certain people, would ensure her appearance in court and the protection of the community. Defendant also asserted she had multiple serious and worsening medical issues for which the jail was not providing adequate treatment. In response, on November 8, 2023, the State filed a petition to deny pretrial release. The State asserted (1) the proof was evident or the presumption great defendant committed first degree murder, (2) her pretrial release would constitute a real and present threat to the safety of any person or the community, and (3) no condition or combination of conditions could mitigate the threat she posed.

¶ 9      C. The Hearing on the State's Petition to Deny Pretrial Release

¶ 10     On November 8, 2023, the trial court held a hearing on the State's petition to deny pretrial release. The State presented the following proffer in support of its petition.

¶ 11     On February 17, 2021, officers from the Oregon Police Department responded to a call from defendant's home regarding N.B. being found not breathing. Defendant directed an officer to a bedroom, where he found N.B. lying on the floor while his father performed chest compressions. According to defendant, "she had gotten up to go to the bathroom, stopped in to check on [N.B.], and that's when she found out [he] was not breathing." N.B. was pronounced deceased at the hospital.

¶ 12     During the execution of a search warrant, officers found a cell phone on a nightstand next to defendant and N.B.'s father's bed. It was determined that the password for this phone "was the same as a password for [defendant's] personal cell phone." In March 2021, police

manually searched the cell phone and, in the process, "located various Google searches and web page visits that were relative [*sic*] to the investigation." These searches, spanning from July 2020 to February 2021, included, in sum: (1) how to " 'kill someone and not get caught,' " (2) " 'I've had thoughts of killing my kid,' " (3) "suicide," (4) " 'common cleaning products that will kill you instantly,' " (5) "how long does an investigation take after a child passes away," (6) "How much does cremation of a child cost," (7) "Scott Peterson and Laci Peterson," (8) " 'deadly poisons,' " and (9) " 'buy arsenic online.' "

¶ 13     The State also proffered that police spoke with N.B.'s paternal grandmother, who reported that "about two months prior [N.B.] told her that [defendant] had come into his bedroom and put a pillow over his head while he was sleeping" and that "[N.B.] had told her [defendant] had tried drowning him in a bathtub." Additionally, N.B.'s maternal grandmother reported to police how "[N.B.] constantly told her he was worried that [defendant] was going to suffocate him" and she "had threatened to put a pillow over his head" and "had tried drowning him in a bathtub." N.B.'s sister described seeing defendant choke him and hit him with a belt. A detective also reviewed one of defendant's journal entries, reflecting "that she hurts her kids."

¶ 14     Additionally, the State proffered that police spoke with a nearby family whom defendant and N.B.'s father asked to care for N.B. Reportedly, N.B. told this family that "[defendant] was hurting him and explained that [she] had come into the bathroom while he was taking a bath, turned off the lights and tried drowning him." Police also spoke to defendant's sister, who reported that "[N.B.] told her [defendant] tried drowning him in the bathtub" and "[defendant] put a pillow over his head and that [N.B.] was scared of [defendant]."

¶ 15     The State then proffered information regarding defendant's mental health and substance abuse issues. Specifically, defendant informed pretrial services in April 2021 that she

has been addicted to alcohol and prescription drugs "for a couple of years" and overdosed on February 23, 2021. On that date, defendant was "life-flighted" to a hospital in Rockford, Illinois, and stayed there for nine days. Defendant was thereafter transported to a psychiatric hospital and stayed there for six days. Defendant was receiving monthly injections of Vivitrol to curb her cravings for alcohol and prescription drugs.

¶ 16    Defendant's counsel proffered that defendant had various medical issues for which the jail was not providing adequate treatment.

¶ 17    After hearing arguments from counsel, the trial court found, on the basis of the evidence before it and "the [Act] and the factors set forth therein," that the State met its burden of clear and convincing evidence that (1) the proof was evident or the presumption great defendant committed a detainable offense, (2) she posed a real and present threat to the safety of any person or the community, and (3) no condition or combination of conditions could mitigate that threat. Accordingly, the court granted the State's petition to deny pretrial release.

¶ 18    On March 27, 2024, defendant pled guilty to one count of first degree murder. On May 15, 2024, the trial court granted defendant's motion to withdraw her guilty plea.

¶ 19    D. The State's Interlocutory Appeal

¶ 20    On July 10, 2024, the State initiated an interlocutory appeal, pursuant to Rule 604(a)(1), of the trial court's rulings on June 18, 2024, and July 1, 2024, regarding various motions *in limine*. The State supplemented its notice of appeal with a certificate of impairment, averring that the court's rulings "substantially impair[ed] the People's ability to proceed at trial."

¶ 21    At a hearing on July 10, 2024, the State notified the trial court of its request for defendant to remain in detention during the pendency of its interlocutory appeal. The State then proffered information from reports submitted by jail personnel on June 28, 2024, and June 30,

2024. According to the report from June 28, 2024, defendant stated she would be refusing to take her psychiatric medication "so when her trial starts she will be able to cry." Defendant indicated "she would be stopping it cold turkey, and it might make her have seizures but she doesn't care about that." Defendant further stated "that when they showed pictures of [N.B.'s] autopsy she wanted to be able to cry so hard that deputies would have to remove her from the courtroom." According to the report from June 30, 2024, defendant stated she intended to escape from the courtroom during a hearing scheduled for the following day.

¶ 22 In response, defendant's counsel proffered that due to defendant's "physical issues" and "limited mobility," her statement about escaping from the courtroom was such that "she believed [it] would be understood that it was a bad joke." Regarding defendant's alleged intention to abstain from her medications to exhibit a highly emotional reaction to viewing the autopsy photos during trial, she "was expressing concern about having an artificial nonemotional response" resulting from her medications, "and she felt that that would be held against her."

¶ 23 Defendant's counsel then addressed the State's request for continued detention:

"Judge, as it relates to the continued detention, I would respectfully assert that Rule 604 actually controls this particular question. We are not truly in a pretrial detention question at this point because of the pendency of the interlocutory appeal, which is unique—it is rare but also unique in that it effectively stalls this proceeding; the right to speedy trial is denied. ***

\* \* \*

And since she no longer has the right to speedy trial while this is pending, this is a remarkable circumstance. And if we actually

look at the totality of the circumstances, with this appeal, we assert that Rule 604(a), particularly (a)(3), tells us she should be released."

¶ 24 The trial court granted the State's request for defendant to remain in detention. The court stated:

"Okay. The Court has taken into account the totality of the record. I do find the State's continued to meet their burden of proof by clear and convincing evidence, proof which the Court for the purpose of [defendant's counsel's] argument does find to be compelling, and I do find that they continue to meet their burden of proof by clear and convincing evidence that no set of conditions will ensure the safety of the community and the safety of [defendant]."

¶ 25 This appeal followed.

¶ 26 II. ANALYSIS

¶ 27 On appeal, defendant argues, in sum, the trial court erred in not ordering her released during the pendency of the State's interlocutory appeal because the State failed to meet its burden, pursuant to Rule 604(a)(3), of showing "compelling reasons" justifying her continued detention. The State disagrees, contending "there are indeed compelling reasons for [defendant's] continued detention" in that she "is a real and present danger to herself, her other children, and the community generally."

¶ 28 Rule 604(a)(1) provides, in pertinent part, that "the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." Ill. S. Ct. R. 604(a)(1) (eff. Apr. 15, 2024). Pursuant to Rule 604(a)(3), a defendant "shall not be held in jail or to bail during the pendency of" such an appeal "unless there are compelling reasons for his or

her continued detention or being held to bail." Ill. S. Ct. R. 604(a)(3) (eff. Apr. 15, 2024). See *People v. Baltimore*, 381 Ill. App. 3d 115, 125 (2008) ("When the State seeks interlocutory appeal of an adverse order, the State must restore the defendant's freedom unless it can establish compelling reasons to override the rule's mandate."). "Rule 604(a)(3) confers unconditional release and restores people to the same freedom enjoyed before any charges were initiated." *People v. Beaty*, 351 Ill. App. 3d 717, 722-23 (2004). The ability of an appellate court to review a trial court's decision on a defendant's continued detention in these circumstances "is part of the power [it] acquire[s] when the State invokes [Rule 604] in order to seek *** interlocutory review of an adverse ruling made by a [trial] judge." *Id.* at 723.

¶ 29        The appellate court has described the principal purpose of Rule 604(a)(3) as follows:

> "Its paramount aim is to guarantee protection from the power granted the State under [Rule 604(a)(1)] [citation] and [Rule 604(a)(4)] [citation]. [Rule 604(a)(1)] grants the State an absolute right to interlocutory appeal from orders suppressing evidence. Exercise of that right takes no more than the filing of a notice of appeal together with a certificate of impairment. [Citation.] The certificate of impairment is unimpeachable. [Citation.] At the same time, [Rule 604(a)(4)] suspends statutory speedy trial rights once appellate jurisdiction is invoked under [Rule 604(a)(1)]. Therefore, the State's right to interlocutory appeal under [Rule 604] imparts to the State an unchallengeable power to significantly delay trial and, by the same act, free itself from statutory duties to prosecute

promptly. [Rule 604(a)(3)] is a defendant's only protection against abuse of this power." *People v. Wells*, 279 Ill. App. 3d 564, 568 (1996).

¶ 30 The appellate court has described the standard the State must meet to justify continued detention during an interlocutory appeal as follows:

> "The touchstone for determination of detention rather than release under the rule is a showing that reasons *compel* detention. Compelling reasons are forceful and impelling reasons irresistible in sense and purpose that afford justification for indeterminate pretrial imprisonment. Such reasons must clearly demonstrate that a defendant should remain imprisoned for an uncertain and indefinite time despite the presumption of innocence and the weakened posture of the State's case.
>
> *** Reasons meeting the standard set forth in [Rule 604(a)(3)] *** are reasons over which reasonable minds would not diverge. They *compel* the conclusion that detention pending interlocutory appeal is the right thing to do." (Emphases in original.)
> *Id.* at 569.

As this court is assessing the trial court's compliance with a supreme court rule, we review its decision *de novo*. *People v. Lloyd*, 338 Ill. App. 3d 379, 384 (2003).

¶ 31 As an initial matter, defendant argues the trial court "evaluated [her] continued detention during appeal under the provisions of [section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2020)] rather than Rule 604(a)(3)." The purported error in this approach, according to

defendant, lies in the fact that "it is clear that pretrial detention historically has been treated as a separate and different matter than the defendant's incarceration during a State's interlocutory appeal," and this has not been altered by the ratification of the Act. The requirement for "compelling reasons" (Ill. S. Ct. R. 604(a)(3) (eff. Apr. 15, 2024)) to justify continued detention during the State's interlocutory appeal "necessarily must be more burdensome on the State than merely meeting the requirements to detain a pretrial defendant under [section 110-6.1 of the Code]." The State disagrees, contending there was no error in its approach of "effectively incorporat[ing] by reference the facts supporting defendant's pretrial detainment as also supporting her continued detention during the pendency of the State['s] appeal."

¶ 32        This court agrees with the State on this point. As defendant acknowledges elsewhere in her brief, "the [trial] court may look to the provisions set forth by the legislature that determine the propriety of pretrial release in ascertaining whether detention is also required by Rule 604(a)(3)." Defendant even cites *Wells*. The *Wells* court noted:

> "The type of reasons to be tested under [Rule 604(a)(3)] calls for nothing unique or novel. The reasons set forth in section 110-5 of the [Code] [citation] for use in the determination of the amount and conditions of initial bail are the type of reasons used for the determination of detention under [Rule 604(a)(3)]. The rule simply subjects these reasons to a higher standard. *** Obviously, the rule contemplates heightened scrutiny. Otherwise, the rule would be pointless." *Wells*, 279 Ill. App. 3d at 569.

¶ 33        Although the trial court here could not refer to the reasons set forth in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)) in its assessment of whether to order defendant's

continued detention and instead considered those set forth in section 110-6.1(e)(3)(i) (725 ILCS 5/110-6.1(e)(3)(i) (West 2022)) (whether any "condition or combination of conditions" could mitigate the threat defendant posed to the safety of persons or the community), there is no reason why the latter could not constitute the requisite "compelling reasons" (see Ill. S. Ct. R. 604(a)(3) (eff. Apr. 15, 2024)) for continued detention if they met the "higher standard" and "heightened scrutiny" contemplated by Rule 604(a)(3). *Wells*, 279 Ill. App. 3d at 569. Thus, as the State posits, "the issue on appeal appears to be very straightforward—[whether] there [are] compelling reasons for defendant's continued detention during the pendency of the State['s] appeal in [case No.] 4-24-0967." More particularly, in the "heightened scrutiny" employed in this court's *de novo* review of the trial court's decision to subject defendant to continued detention during the State's interlocutory appeal, whether the information adduced by the State constitutes "forceful and impelling reasons" which "clearly demonstrate that *** defendant should remain imprisoned" during the appeal. *Id.*

¶ 34         Defendant first argues that "the majority of the potential evidence noted by the State in its proffer was expressly barred at [her] upcoming trial." Consequently, "[c]onsidering the state of the evidence, this is not a case where it was overwhelmingly likely that the jury would find [defendant] guilty as charged." However, we reiterate that the trial court's various pretrial evidentiary rulings are presently being considered in a separate, interlocutory appeal and neither defendant nor the State are in any position at this point to know the totality of the evidence that will eventually be deemed admissible at trial. Moreover, as the State points out, the evidence the trial court thus far *has* permitted includes statements N.B. made to two people about incidents of suffocation, choking, and drowning at defendant's hands, as well as highly incriminating Internet

searches defendant allegedly conducted into the length of an investigation into the death of a child, the cost of cremating a child, and obsessive thoughts about killing one's child.

¶ 35    Next, defendant argues the evidence does not establish she poses a danger to "any other specific person in the community" and "the record does not support the [trial] court's conclusion that [her] release posed an unmitigable risk to the safety of the community." However, defendant (1) is presently charged with the murder of her seven-year-old son, (2) has been identified as the perpetrator of previous acts of serious physical abuse against him (even in terms of the limited information thus far deemed admissible), (3) has allegedly searched online for information pertaining to the death or murder and cremation of one's own child (even in light of this same limitation), (4) has a history of addiction and psychiatric hospitalizations and has expressed an intention to abstain from her medications (to the complete disregard of any adverse medical consequences), and (5) has other children to whom she would pose a danger if released pending appeal.

¶ 36    Finally, defendant argues that given her mobility issues and serious medical conditions, "the record is clear that [she] is not likely to escape or fail to answer to the charges," contrary to the trial court's determination her continued detention was necessary to ensure her appearance. However, as the State points out, defendant did comment to a jail deputy about her desire to escape from the courtroom. While defendant correctly notes in her reply brief that "no escape attempt materialized at the July 1, 2024[,] courtroom appearance," her remark about wanting to escape must be viewed in the broader context of her experiences with severe mental illnesses (self-disclosed in the presentence investigation report compiled after her guilty plea as major depression, suicidal ideation, anxiety, and borderline personality disorder) and her expressed

intention to cease taking her medications in order to manufacture a highly distraught presentation before the jury.

¶ 37     We are mindful that "the fact that *** defendant is charged with murder, standing alone, is not reason to detain [her] while the State appeals. *** [Rule 604(a)(3)] mandates release without carving an exception for a defendant charged with murder." *Id.* at 566-67. Nevertheless, in our *de novo* review of the record, we conclude the aforementioned considerations constitute "reasons over which reasonable minds would not diverge" as to the propriety of continuing defendant's detention during the pendency of the State's interlocutory appeal and which "*compel* the conclusion that detention pending interlocutory appeal is the right thing to do." (Emphasis in original.) *Id.* at 569. Accordingly, we affirm the trial court's order continuing defendant's detention.

¶ 38                                III. CONCLUSION

¶ 39     For the reasons stated, we affirm the trial court's judgment.

¶ 40     Affirmed.