2021 IL App (1st) 191932-U

No. 1-19-1932

Order filed July 21, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 7414 |
| | ) | |
| | ) | Honorable |
| LAMARR MAXEY, | ) | Noreen Love and |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's summary dismissal of defendant's postconviction petition over his contention that he asserted non-frivolous claims that (1) his sentence was unfairly disparate to his codefendant's sentence, and (2) trial and appellate counsel were ineffective for failing to challenge his sentence.

¶ 2     Defendant Lamarr Maxey appeals the summary dismissal of his petition for relief under

the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). He argues that the

trial court erroneously summarily dismissed his petition where he stated non-frivolous claims that

(1) his sentence was unfairly disparate to his codefendant's sentence, and (2) trial and appellate counsel were ineffective for failing to challenge his sentence. For the following reasons, we affirm.

¶ 3      Following a joint bench trial with codefendant Shadeed Love, defendant was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2010)) and sentenced to 20 years' imprisonment. His sentence was to run consecutively to his 11-year sentence for an unrelated 2008 attempted aggravated armed robbery conviction in case number 08 CR 20482 (the 2008 case). Codefendant Love was also found guilty of residential burglary and was sentenced to 11 years in prison.[1]

¶ 4      In 2008, defendant had been arrested for an attempted aggravated robbery. In 2009, prior to trial in the 2008 case, defendant was released on bond while the State appealed the trial court's order granting defendant's pretrial motion to suppress. In 2011, while he was out on bond, defendant was arrested in the instant case and tried in a December 2012 bench trial. We set forth the facts in defendant's direct appeal and recite them here to the extent necessary to our disposition. See *People v. Maxey*, 2018 IL App (1st) 130698-B.

¶ 5      The evidence at trial showed that, on April 18, 2011, Robert Fjeldheim returned to his home on Jackson Boulevard around 11:04 a.m. and observed a red van in his driveway. He saw the headlights flash and heard the horn honk before hearing a voice say, "He is home." Fjeldheim's back door opened, and he ducked. Love grabbed Fjeldheim's hood and attempted to hit him in the head with a flashlight. The two wrestled and Fjeldheim knocked the flashlight loose. Fjeldheim heard someone in the house say, "Get his keys. Get his keys." Defendant then ran out the back door, and Love let Fjeldheim go. The men got in the van and drove away, almost hitting Fjeldheim. Fjeldheim called 911 and described the offenders.

---

[1] Love is not a party to the instant appeal.

¶ 6    When the police arrived, Fjeldheim identified defendant and Love as the offenders. He also identified property from his house, including jewelry, photos, and business cards. Fjeldheim did not give the men permission to enter his house or remove anything from it.

¶ 7    Defendant and Love were apprehended by Detective Anthony Milazzo and Chief Joseph Lukaszek while they fled the scene in the red van. Milazzo observed a red van driving about a half mile from the burglary. When the officers attempted to stop the van, it fled and ultimately hit a tree going down an embankment. Milazzo identified defendant as the driver and Love as the passenger in the van. They were caught after attempting to flee on foot. Milazzo recovered a pillowcase of items from the van, which Fjeldheim later identified as his property. A certified document from the Illinois Secretary of State showed defendant was the owner of a 1999 Chevy van.

¶ 8    The trial court found defendant guilty of residential burglary and aggravated fleeing or attempting to elude a peace officer. It found Love guilty of residential burglary.

¶ 9    On January 10, 2013, prior to sentencing in the instant case, defendant filed a motion to vacate the bond entered in the 2008 case, which the trial court denied. Following that denial, defendant pled guilty to attempted aggravated robbery in the 2008 case and was sentenced to 11 years' imprisonment.

¶ 10   On February 27, 2013, the trial court conducted a joint sentencing hearing for defendant and Love in the instant case. Defendant's presentence investigation (PSI) revealed that he had 11 prior felony convictions dating back to 1985, including unlawful restraint in 1985, burglary in 1987, robbery in 1990, forgery in 1990, theft in 1990, robbery of a victim over 60 years old in 1994, aggravated battery in 1995, robbery in 1995, possession of contraband in penal institution

in 1995, and attempted aggravated robbery in 2013 (the 2008 case). He had been sentenced to terms of imprisonment ranging from 2 years to 27 years.

¶ 11     In aggravation for defendant, the State argued that the victim's two cats died as a result of being thrown down the stairs during the burglary. It also argued defendant was a Class X offender due to his criminal history and had the 2008 case pending when he committed the offense in the instant case. The State specified defendant's sentence in this case was required to be consecutive to the 11-year sentence he received in the 2008 case as he committed the instant case while the 2008 case was pending. Further, it argued defendant was the person who rushed out of the house and was the driver in the instant case. The State asked for a 25-year sentence for defendant.

¶ 12     In mitigation, defense counsel argued defendant was 45 years' old, had no gang involvement, and had three children. Counsel argued he graduated high school, obtained an associate's degree in 2004, and was attending school and working at the time of his arrest. Defendant "obviously" had a "bad background," but counsel requested leniency from the court because his sentence would be imposed consecutively to his 11-year sentence in the 2008 case.

¶ 13     In allocution, defendant apologized "to all the people [he] let down," and stated his participation in the crime was "stupidity," and he had wanted to resolve the case without going to trial and wasting the court's time.

¶ 14     The court responded by stating that defendant apologized for taking up the court's time but did not apologize "to the elderly gentleman who had to tussle with you guys because you were in his home rummaging through his things, taking his things, that had significant sentimental value." The court went on to note defendant had "a horrible history, robbery, aggravated battery, robbery, robbery, possession, residential burglary" and that it felt "sorry for [his] three children." The court

questioned defendant's intent in obtaining an associate's degree while incarcerated because he "sure didn't take it and use it to do something positive in [his] life." It concluded defendant was "not a fit person for this society." The court sentenced defendant, as a Class X offender, to a term of 20 years for residential burglary and a concurrent term of 3 years for aggravated fleeing. The sentence imposed in this case was to run consecutive to the sentence imposed in the 2008 case.

¶ 15     Love's sentencing took place during the same hearing as defendant's. Love had been arrested in 2010 for an unrelated residential burglary. Like defendant, Love was arrested in the instant case while another case, his 2010 case, was pending. In October 2011, Love pled guilty to residential burglary in the 2010 case and was sentenced to five years' imprisonment.

¶ 16     In aggravation for Love in the instant case, the State argued he was "Class 1, extendable and nonprobationable." The State noted Love also "has a consecutive case under 10 CR 15395," which was pending when he committed the burglary in the instant case. Love's PSI showed he was a Gangster Disciple. His criminal history included several misdemeanors, including unlawful possession of drug paraphernalia in 2011, aggravated assault of a peace officer in 2011, and criminal trespass to residence in 2010. Love received probation in the 2011 unlawful possession and the 2010 criminal trespass cases and each probation was terminated unsatisfactorily. The State asked for a 12-year sentence for Love, again emphasizing that "he is extendable and nonprobationable *** on the Class 1 consecutive to the residential burglary."

¶ 17     In mitigation for Love, his counsel argued that he denied any gang affiliation, had three children, and used drugs and alcohol, which had contributed to his participation in the offense. Defense counsel acknowledged Love had a prior felony conviction for residential burglary, for

which he received a five-year sentence, and "[w]hatever sentence the court gives him in this case will run consecutive to that sentence." Counsel requested a five-year sentence in the instant case.

¶ 18    In allocution, Love apologized for "dealing with the wrong people" and stated he did not try to harm anyone.

¶ 19    The court stated Love's actions were his fault, not the fault of those around him. It found Love's background was "not even close to the background" of defendant but noted it was not Love's first time entering someone's home. It sentenced Love to 11 years' imprisonment and then admonished both defendant and Love of their appeal rights.

¶ 20    Following a recess, defendant filed a motion to reconsider sentence, which the court denied.

¶ 21    Defendant appealed the 2008 case following his sentencing in the instant case. On direct appeal in the 2008 case, this court affirmed his conviction for attempted aggravated battery. See *People v. Maxey*, 2015 IL App (1st) 140036. In that appeal, defendant argued, *inter alia*, that the bond order on which he was released was void and asked this court to vacate the consecutive sentence imposed in the case at bar. We concluded that we had jurisdiction to consider defendant's untimely challenge to his bond but declined to consider it on the merits. *Id.* ¶ 38. In so finding, we stated defendant's ultimate goal was to vacate the consecutive sentences imposed in the current case, which would have rendered our decision in the 2008 case an advisory opinion. *Id.*

¶ 22    On direct appeal in the instant case, we affirmed defendant's conviction and sentence for residential burglary, reversed his conviction for aggravated fleeing or attempting to elude a peace officer and vacated the sentence of three years imposed on that conviction, and corrected the fines and fees order. *People v. Maxey*, 2016 IL App (1st) 130698. Following a supervisory order from

the supreme court (*People v. Maxey*, No. 121137 (Nov. 22, 2017)), we vacated our order and reconsidered in light of *People v. Wright*, 2017 IL 119561. Upon reconsideration, we again affirmed in part, reversed in part, and corrected the fines and fees order. *Maxey*, 2018 IL App (1st) 130698-B.

¶ 23    On June 24, 2019, defendant filed a *pro se* postconviction petition under the Act. Defendant alleged, *inter alia*, that the trial court violated the sixth amendment by "committ[ing] a sentence disparity claim" by sentencing only defendant, and not Love, to consecutive sentences, despite being informed both were required to be sentenced consecutively. He also alleged trial and appellate counsel were ineffective for failing to raise a disparate sentencing claim before the trial court and on direct appeal, respectively.

¶ 24    Specifically, defendant claimed his sentence was imposed consecutively to the sentence in his 2008 case "pursuant to 730 ILCS 5/5-8-4(h)" and Love's sentence similarly should have been consecutive to his 2010 case, but it was instead imposed concurrent to the 11-year sentence in his 2010 case, demonstrating the trial court's bias. Because defendant received "an aggregate sentence of 31 years," his sentence was "20 years more than his similarly situated *** codefendant" who was given an 11-year concurrent sentence. Defendant claimed that the trial court did not mention that Love's sentence was consecutive to his prior sentence, and therefore he was released from custody in June 2016, while defendant, who was "similarly situated" to Love, remained incarcerated. He claimed trial counsel should have objected to the sentencing disparity and appellate counsel should have filed a disparate sentencing claim on direct appeal.

¶ 25    In support of his petition, defendant attached portions of various transcripts, an excerpt from this court's decision in the 2008 case (*Maxey*, 2015 IL App (1st) 140036), and letters from

his appellate counsel regarding his appeals in both the 2008 case and the instant case. His attorney was the same for both appeals.

¶ 26 On July 26, 2019, the circuit court summarily dismissed defendant's petition, finding that whether Love was improperly sentenced to a concurrent sentence had no bearing on defendant's sentence, which was required by statute to be served consecutively to his sentence in the 2008 case. The court concluded any alleged issue surrounding Love's sentence was not an error defendant or counsel could raise in his own case and was not a constitutional claim.[2]

¶ 27 On appeal, defendant argues the circuit court erred in dismissing his postconviction petition because he stated nonfrivolous claims that (1) his sentence was unfairly disparate to Love's sentence, and (2) trial and appellate counsel were ineffective for failing to challenge the disparity between their sentences.

¶ 28 The Act sets forth a three-stage process as a means for criminal defendants to challenge their convictions based on constitutional violations. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). Defendant's petition for postconviction relief was summarily dismissed at the first stage, where the trial court independently reviews the petition, taking the well-pleaded allegations as true, and determines whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *People v. Robinson*, 2020 IL 123849, ¶ 45. A petition may be summarily dismissed as "frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges,* 234 Ill. 2d 1, 11-12 (2009); *People v. Tate,* 2012 IL 112214, ¶ 9. A claim has no arguable basis when it is based on an indisputably meritless legal theory, such as one

---

[2] On September 17, 2019, defendant filed a notice of appeal from the circuit court's dismissal of his petition. The Illinois Supreme Court directed this court to treat the notice of appeal as properly perfected. *Maxey v. Ellis*, No. 126505 (Oct. 27, 2020).

completely contradicted by the record, or a fanciful factual allegation, such as those that are fantastic or delusional. *People v. Brown,* 236 Ill. 2d 175, 185 (2010).

¶ 29     To survive the first stage, a petition need only present the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24. Presenting a "gist" of a constitutional claim is a low threshold, and only limited detail is necessary for the petition to proceed beyond the first stage of postconviction review, as opposed to setting forth a claim in its entirety. *Hodges,* 234 Ill. 2d at 9; *People v. Williams,* 364 Ill. App. 3d 1017, 1022 (2006). We review the summary dismissal of a postconviction petition *de novo*. *Hodges,* 234 Ill. 2d at 9.  We review the trial court's judgment and not the reasons cited for the judgment, and we may affirm the trial court on any basis supported by the record. *People v. Munoz*, 406 Ill. App. 3d 844, 850 (2010).

¶ 30     Defendant claims his sentence was unfairly disparate to Love's because his base sentence was 20 years and aggregate sentence was 31 years (20 years served consecutive to 11 years in the 2008 case) whereas Love's sentence for the same offense was only 11 years. He contends the disparity is excessive in light of his and Love's similar criminal histories and equal culpability in the instant case.

¶ 31     Defendant acknowledges that his claim could have been raised on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22 (postconviction issues that could have been raised on direct appeal, but were not, are forfeited). He argues, however, that trial counsel was ineffective for failing to bring it to the trial court's attention and appellate counsel was ineffective for failing to raise it on direct appeal. See *id*. (forfeiture is relaxed in cases where the forfeiture stems from ineffective assistance of appellate counsel or where the facts surrounding the issue do not appear on the face of the original appellate record).

¶ 32 As an initial matter, the State argues that we should not review this issue because defendant did not argue in his petition that he and Love were similarly situated in terms of criminal history and had equal culpability in the offense. It contends defendant's only claim before the trial court was that the sentences were disparate because his sentence was mandatorily consecutive to that in an earlier case whereas Love's sentence, which should have been consecutive, was not. Generally, appellate counsel cannot raise issues on appeal that are not contained in the postconviction petition. *People v. Coleman,* 2011 IL App (1st) 091005, ¶ 16.

¶ 33 We are unpersuaded by the State's argument in light of the requirement that a *pro se* petition be given a liberal construction. "Where defendants are acting *pro se,* courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Hodges,* 234 Ill. 2d at 21 (citing *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983)). A *pro se* defendant need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Hodges,* 234 Ill. 2d at 9. In his petition, defendant argued that the trial court violated his sixth amendment right by imposing unfairly disparate sentences and that he and Love were "similarly situated." On appeal, appellate counsel argues defendant's and Love's similar criminal histories and equal culpability in the crime rendered them similarly situated. We thus find that defendant has sufficiently alleged the claim in his petition so that it may be reviewed on appeal.

¶ 34 Where a defendant makes a postconviction claim of ineffective assistance of counsel, his petition survives summary dismissal if: "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17; *Tate*, 2012 IL 112214, ¶¶ 18-20. This requirement is based on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), but we apply a more

lenient standard in first stage proceedings. *Tate*, 2012 IL 112214, ¶ 19. It is defendant's burden to satisfy both prongs of the test. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 35    Under the first prong, the defendant must prove that counsel's performance was arguably deficient because it fell below an objective standard of reasonableness under the prevailing professional norms. *People v. Ramirez*, 2018 IL App (1st) 152125, ¶¶ 15-16. There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance. *Strickland*, 466 U.S. at 690. The second prong requires that the defendant establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding arguably would have been different." *Strickland*, 466 U.S. at 694. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of [the proceedings] unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 36    The constitutional right to effective assistance of counsel applies to counsel on a direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are governed by the same test used in assessing claims of ineffective assistance of trial counsel set forth in *Strickland,* 466 U.S. 668. *People v. Lacy,* 407 Ill. App. 3d 442, 457 (2011). Where we can dispose of a defendant's ineffective assistance claim because he suffered no prejudice, we need not address whether counsel's performance was objectively reasonable. *Lacy,* 407 Ill. App. 3d at 457.

¶ 37    We find defendant failed to state an arguable claim of ineffective assistance of trial counsel and appellate counsel because he cannot show that he was arguably prejudiced by counsels' decisions not to challenge his sentence as unfairly disparate to Love's.

¶ 38    Generally, an arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible. *People v. Caballero,* 179 Ill. 2d 205, 216 (1997). Our supreme court has previously held that fundamental fairness requires that "similarly situated" codefendants, who were involved in the same crime, should not "receive grossly disparate sentences." *People v. Fern*, 189 Ill. 2d 48, 58 (1999); see also U.S. Const., amend. XIV (due process clause); Ill. Const. 1970, art. I, §§ 2, 11 (due process and proportionate penalties clauses). However, a disparity in sentences, by itself, does not establish a violation of fundamental fairness. *Caballero*, 179 Ill. 2d at 216.

¶ 39    "An 'improper sentence disparity' may occur when 'equally culpable defendants with similar backgrounds are given substantially different sentences.' " *People v. Guerrero*, 2020 IL App (1st) 172156, ¶ 53 (quoting *People v. Ramos*, 353 Ill. App. 3d 133, 139 (2004)). To prevail on a claim of disparate sentencing, a defendant bears the burden of demonstrating that he and his codefendants were all (1) equally culpable and (2) "similarly situated with respect to background, prior criminal history, and potential for rehabilitation." *Ramos*, 353 Ill. App. 3d at 139; *People v. Curry*, 296 Ill. App. 3d 559, 569 (1998).

¶ 40    We first note that defendant's argument that his aggregate 31-year sentence is impermissibly disparate to Love's 11-year sentence is misleading. His sentence in this case was 20 years for residential burglary, which was statutorily required to be consecutive to his 11-year sentence in the 2008 case. See 730 ILCS 5/5-8-4(d)(8) (West 2012) (the court "shall" impose

consecutive sentences where a person charged with a felony commits a separate felony while on pretrial release). Defendant does not argue imposition of the consecutive sentence was improper. Instead, he attempts to add his 11-year sentence from the 2008 case to his 20-year sentence in this case, for a total sentence of 31 years, to bolster his claim that his sentence was disparate to Love's in the instant case.

¶ 41 However, defendant cites no relevant authority to support this premise. The cases he cites do not stand for the proposition that his prior sentence in an unrelated case is a factor to be considered in a disparate sentencing claim in this entirely separate case. See *e.g.*, *People v. Morris*, 2017 IL App (1st) 141117, ¶ 30 (finding a 100-year aggregate sentence imposed on a minor convicted of first degree murder and attempted first degree murder in the same case was a *de facto* life sentence); *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 77-78 (finding the minor defendant's cumulative sentence of 52 years' imprisonment in the same case shocked the moral sense of community and was unconstitutional in light of the defendant's youth and mental disorders). To be entitled to relief, defendant must show that his 20-year sentence was unconstitutionally disparate to Love's 11-year sentence.

¶ 42 We find that, even assuming defendant and Love were equally culpable in committing the offense, defendant has not met his burden of demonstrating that he and Love were similarly situated in terms of criminal history and rehabilitative potential. The record on appeal shows defendant had 11 prior felony convictions, including for unlawful restraint, burglary, forgery, theft, aggravated battery, two robberies, and attempted aggravated battery, with prison terms ranging from 2 years to 27 years. In contrast to defendant's extensive criminal history, Love had only a

few prior misdemeanor convictions and one prior felony conviction from his 2010 case. Thus, defendant and Love were not at all similarly situated as to their criminal history.

¶ 43    Further, although defendant was convicted of residential burglary, a Class 1 offense (720 ILCS 5/19-3(b) (West 2010)), he was mandatorily sentenced as a Class X offender based on his criminal history. See 730 ILCS 5/5-4.5-95(b) (West 2012) (when an individual over the age of 21 has been convicted of a Class 1 or 2 felony after having two prior Class 2 or greater convictions, he shall be sentenced as a Class X offender). As a Class X offender, he was subject to a mandatory sentence between 6 and 30 years. See 730 ILCS 5/5-4.5-25 (West 2012).

¶ 44    Unlike defendant, Love's criminal history did not require he be sentenced as a Class X offender with a 6 to 30-year sentencing range. Rather, he was a Class 1 offender (720 ILCS 5/19-3(b) (West 2010)), which carries a sentencing range of 4 to 15 years (730 ILCS 5/5-4.5-30(a) (West 2012)). Due to his 2010 conviction for residential burglary, Love was eligible for an extended term Class 1 sentence (730 ILCS 5/5-5-3.2(b)(1) (West 2012)), with a sentencing range of 4 to 30 years (730 ILCS 5/5-4.5-30(a) (West 2012)), but the extended term sentence was discretionary, not mandatory.

¶ 45    Thus, although defendant and Love each could have been sentenced to up to 30 years in prison, this does not render them similarly situated as there is a distinct difference in their sentencing ranges. Defendant was *required* to be sentenced to a term of 6 to 30 years (730 ILCS 5/5-4.5-95(b) (West 2012)), while Love was *required* to be sentenced to 4 to 15 years and was merely *eligible* for a discretionary extended term up to 30 years (730 ILCS 5/5-5-3.2(b)(1) (West 2012); 730 ILCS 5/5-4.5-30(a) (West 2012)). In fact, the State requested a 25-year sentence for defendant and a 12-year sentence for Love, and the court imposed sentences below those requests.

¶ 46    In sentencing defendant to 20 years, the trial court considered the circumstances of the offense but emphasized defendant's criminal background and lack of rehabilitation potential, stating his criminal history was "horrible," reciting a litany of his prior convictions, and finding he was "not a fit person for this society." See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (a defendant's criminal history alone may warrant a sentence substantially above the minimum). In sentencing Love to 11 years in prison for the same offense, the court specifically noted that Love's criminal background was not nearly as extensive as defendant's, demonstrating that it expressly considered the difference in criminal histories between defendant and Love as a basis for the disparate sentences.

¶ 47    Given defendant's mandatory Class X sentence, his extensive criminal background, and his lack of rehabilitative potential compared to Love's vastly less significant criminal background and eligibility for a lower sentencing range, we cannot say defendant's sentence was unconstitutionally disparate to Love's. Because defendant's sentencing issue is without merit, he cannot state an arguable claim that he was prejudiced by trial and appellate counsel's failure to raise the issue. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 48    Finally, we note that, although defendant appears to have abandoned the contention in his petition that the sentences are disparate because he was given a consecutive sentence while Love erroneously was not, to the extent he may be making this argument on appeal, we find it without merit. Even if trial counsel had brought Love's arguably improper concurrent sentence to the attention of the trial court, defendant's sentence would not be affected as it was still required by

statute to be consecutive to the sentence in his 2008 case, and he therefore cannot demonstrate prejudice from trial or appellate counsel's failure to raise this issue. *Enis*, 194 Ill. 2d at 377.

¶ 49 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 50 Affirmed.