2023 IL App (1st) 192169
Opinion filed March 31, 2023

Sixth Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 21385-03 |
| | ) | |
| FREDDIE CLEMONS, | ) | The Honorable |
| | ) | Steven J. Goebel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justice C.A. Walker concurred in the judgment and opinion.
Justice Tailor dissented, with opinion.

**OPINION**

¶ 1     Defendant Freddie Clemons appeals from the trial court's denial of his petition for postjudgment relief filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). On appeal, defendant argues, first, that his due process rights were violated on September 23, 2019, when the trial court, at an *ex parte* hearing, granted the State's oral motion to dismiss his section 2-1401 petition without first giving him an opportunity to respond. Second, defendant argues that the trial court further erred when, on October 18, 2019, after he had filed a motion to reconsider the dismissal, the trial court recharacterized his section 2-1401 petition as a petition for postconviction relief without first admonishing him about the

recharacterization and without giving him an opportunity to withdraw or amend his petition. See the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2018)). For the following reasons, we vacate and remand for further proceedings consistent with this opinion.

¶ 2                                    I. BACKGROUND

¶ 3     Following a 2015 jury trial, defendant was found guilty of four counts of armed robbery with a firearm for robbing an Aldi grocery store on October 23, 2012. After merging the counts, the trial court sentenced him to 30 years with the Illinois Department of Corrections (IDOC). Following a direct appeal, his conviction was affirmed on December 26, 2017, in an unpublished order. *People v. Clemons*, 2017 IL App (1st) 150984-U, ¶ 44. A detailed description of the trial evidence was provided in that order. Therefore, we describe only the facts and proceedings needed to understand the current issues on this appeal.

¶ 4     At trial, the State called four Aldi employees: Alex Valenzuela, Ella Villarruel, Corrin Wimmer, and Josefina Chavez. Their testimony showed that, on October 23, 2012, at around 9 p.m., defendant and two other men entered an Aldi store in Streamwood, Illinois. Defendant pointed a firearm and ordered Valenzuela to lie on the floor. Defendant ordered Wimmer to open a cash register and then to lie on the floor. Next, defendant ordered Chavez to open as many registers as she could. Defendant made statements to the effect that they were taking Aldi's money. After removing money from the registers, defendant and the other two men left the store. One of the men, codefendant Derrick Shelby, was arrested shortly after he ran from the store and after he had dropped a plastic bag containing money. The other man, codefendant Joseph Bobbitt, was arrested by police as he hid in bushes near the area.[1] The police recovered the dropped plastic bag

---

[1]Codefendants Shelby and Bobbitt were charged in the same indictment. Codefendant Shelby pled guilty to armed robbery without a firearm in exchange for a nine-year prison sentence. Codefendant Bobbitt was tried in a separate trial from Clemons and found guilty of armed robbery. Neither codefendant joins in this appeal.

containing money. In addition, an employee from a nearby store turned over more money that had been dropped by the other fleeing suspects.

¶ 5 On October 23, 2012, a Streamwood police detective spoke with co-defendant Shelby, and defendant became a suspect. After the Streamwood detective obtained an arrest warrant for defendant's arrest, he learned that defendant had already been arrested by another agency.[2] The four Aldi trial witnesses identified defendant from a photo array before trial and in court.

¶ 6 The jury found defendant guilty of four counts of armed robbery, which the trial court subsequently merged into one count of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2012)). On March 20, 2015, the trial court sentenced defendant to 15 years for armed robbery, plus a 15-year firearm enhancement, for a total of 30 years with IDOC. On April 3, 2015, defendant filed a timely notice of appeal.

¶ 7 On direct appeal, defendant argued (1) that he was denied a fair trial when the State elicited hearsay testimony revealing the substance of co-defendant Shelby's statement to police identifying defendant as one of the offenders and (2) that, during *voir dire*, the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) by failing to admonish the jurors that defendant's decision not to testify could not be used against him, and by failing to ask the jurors whether they understood and accepted the principles set forth in Rule 431(b). *Clemons*, 2017 IL App (1st) 150984-U, ¶ 2. On December 26, 2017, the appellate court affirmed, finding (1) that the admission of the officers' testimony did not deprive defendant of a fair trial, where their testimony was offered to show the course of their investigation, and (2) that the *voir dire* errors, although clear,

---

[2]On November 7, 2013, the trial court entered a written order "order[ing] that the Streamwood police department be allowed to process the defendant" Clemons.

did not rise to the level of plain error because the evidence against defendant was not closely balanced. *Id.* ¶¶ 32, 35, 42, 44.

¶ 8    On September 18, 2019, defendant filed the *pro se* petition for relief from judgment pursuant to section 2-1401, which is at issue on this appeal. Defendant's petition began: "Petitioner Freddie Clemons, pursuant to 735 ILCS 5/12-1401,[3] respectfully petitions this Honorable Court to set aside the finding of Guilty."[4] Defendant alleged, first, that the trial judge exhibited prejudice and bias against him during the trial and at sentencing. Second, defendant alleged that the trial court erred by not ordering the 15-year sentence for armed robbery to run concurrently with the 15-year firearm enhancement and that these allegedly "consecutive" sentences violated the proportionate penalty clause and the one act, one crime rule. The half-sheet entry for September 19, 2019, begins: "Inmate correspondence—PC."

¶ 9    On September 23, 2019, during a proceeding that the State attended but defendant did not, the trial court asked the assistant State's attorney (ASA) if he had read defendant's "letter." After acknowledging receipt, the ASA argued, "The defendant was sentenced on armed robbery with a firearm with a 15-year enhancement. Defendant apparently is under the belief that enhancement runs concurrently with the sentence. Your Honor, clearly that is not the case, so we ask that his motion be denied." Misstating the basis of the conviction, the court inquired, "When did he plead guilty? Back in 2015. All right." Based on this misstatement, the trial court then made the following finding, "Obviously well over 30 days have gone by. So, his motion to set aside the guilty verdict which is really a plea and vacate sentence will be denied." This misstatement of fact,

---

[3]Defendant mistakenly referred to the section here as "5/12-1401" rather than "5/2-1401."
[4]Defendant also utilized a form entitled "Petition for Relief from Judgment," which began, "Now comes, Freddie Clemons Petitioner herein, in the above entitled cause seeking *** relief pursuant to Chapter 735/2-1401."

and the finding based on it, were then enshrined in the trial court's subsequent half-sheet[5] that stated: "Motion vacate plea denied [.] Clerk to notify[.]" The half-sheet is stamped: "ENTERED Judge Steven J. Goebel."

¶ 10    On October 11, 2019, defendant mailed a *pro se* motion to reconsider the denial of his section 2-1401 petition, observing that the trial court had incorrectly denied his petition on the ground that he had pled guilty when he had not. Defendant's motion began:

"Petitioner Freddie Clemons humbly ask[s] the Honorable Court to reconsider his Relief in Judgement motion base[d] on the plain error of the case. The Court's denied the petitioner Clemons relief of judgement on the basis of belief that the petitioner took a plea deal. Petitioner Clemons never entered into a plea deal."

On that same day, defendant also mailed a *pro se* notice of appeal. Both documents were stamped "FILED" by the clerk of the circuit court on October 18, 2019.

¶ 11    On October 25, 2019, in another proceeding that occurred without defendant present, the trial court reviewed defendant's motion to reconsider and attempted to correct its prior misstatements that defendant's conviction was based on a guilty plea and that his petition was a motion to vacate a plea:

"All right. I previously ruled on post-conviction.

---

[5]" 'A half-sheet is a sheet on which the clerk's office enters chronological notations indicating the procedural events of a case.' " *People v. Begay*, 2018 IL App (1st) 150446, ¶ 47 (quoting *People v. Jones*, 2015 IL App (1st) 133123, ¶ 8 n.3. "A half-sheet entry is also called a 'docket' entry (*People v. Cooper*, 2015 IL App (1st) 132971, ¶ 7), and it may be relied on as some evidence of certain legal events." *Id.* (relying on the half-sheet to establish the filing date of a postconviction petition); see also *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 33 (although the record did not contain a written jury waiver, the half-sheet established that the defendant had waived a jury); *People v. Brials*, 315 Ill. App. 3d 162, 177 (2000) (same).

The defendant is essentially challenging the constitutionality of the enhanced 15-year weapon statute on an armed robbery that he was found guilty of by a jury.

The case was appealed and affirmed on appeal, so, respectfully, the defendant's motion to reconsider is denied.

Additionally, there's numerous cases saying the enhanced sentencing statute is constitutional. It's not one act, one crime."

The trial court then appointed the State Appellate Defender (SAD) to represent defendant on this appeal. The trial court's half-sheet for October 25, 2019, indicates that defendant's filing was a postconviction petition. Specifically, with respect to the denial of defendant's motion to reconsider, the half-sheet states: "PC Motion Reconsider Denied[,] SAD is appointed[,] both D + SAD to be notified." The abbreviation "PC" is circled in pen, so it is hard to miss. The half-sheet is stamped: "ENTERED Judge Steven J. Goebel." The website for the Clerk of the Circuit Court of Cook County similarly indicates that the trial court denied defendant's post-conviction petition. The corresponding entry for October 25, 2019, on the trial court's docket list clearly states, "post-conv petition denied."

¶ 12    Four days later, on October 29, 2019, the half-sheet contains the following confusing notation, "PC 2-1401 Petition Filed Transfer to Judge Martin for hearing/ruling OC 11-22-19."[6] As before, the abbreviation "PC" is circled in pen and the half-sheet is stamped: "ENTERED Judge Steven J. Goebel." The notation is confusing because (1) it refers to the petition as both a "PC" petition and a "2-1401" petition and (2) it indicates that the matter was being transferred to another

---

[6]The docket list for October 29, 2019, states that the case was "transferred," and the docket list that is in the appellate record stops on October 30, 2019.

judge for another hearing and ruling in November, thereby suggesting that the prior, October 25, 2019, ruling may not have been final. The parties filed a supplement to the record in order to provide us with the transcripts for the September 23 and October 25, 2019, hearings. If there were further hearings in November 2019 in connection with this case, as the October 29 entry suggests, no transcript for them has been provided in the record before us.

¶ 13     On January 27, 2021, the Illinois Supreme Court entered a supervisory order directing this court "to treat the notice of appeal file stamped on October 18, 2019, and assigned appeal No. 1-19-2169, as a properly perfected appeal" from both (1) the trial court's September 23, 2019, order "dismissing the petition for relief from judgment" *and* (2) the trial court's October 25, 2019, order denying his "motion to reconsider." *Clemons v. Gordon*, No. 126854 (Ill. Jan. 27, 2021) (supervisory order). Thus, pursuant to our supreme court's supervisory order, this court has jurisdiction to consider both of the trial court's orders, whether or not either one was a final order.

¶ 14                                II. ANALYSIS

¶ 15     On this appeal, defendant argued that his due process rights were violated when the trial court, at an *ex parte* hearing, granted the State's oral motion to dismiss his petition without first giving him the opportunity to respond and that the trial court erred when it recharacterized his section 2-1401 petition as a petition for postconviction relief without first giving him admonishments and an opportunity to withdraw or amend it. Defendant further argued: "The record now indicates that [defendant] filed a post-conviction petition and that he will be subjected to the higher pleading requirements of filing a successive post-conviction petition if he were to file a post-conviction petition."

¶ 16     In response to defendant's argument that the abbreviation "PC" on the half-sheet referred to a postconviction petition, the State responded that "the State has looked at" that page in the half-

sheet "and does not see it." The State acknowledged that "[t]here is, in the upper left hand corner a circle with the letters 'PC' in it," but argued that it did not know "if this is what defendant is referring to."[7] The State did not respond to defendant's argument that the circuit court's website also referred to a postconviction petition and, thus, the State argued that there was one "lone \*\*\* misstatement" by the trial court, which was not enough to recharacterize the petition. The State did concede that the trial court erred in dismissing the petition without giving defendant an opportunity to respond but asserted that this error was harmless where the petition was untimely and lacked merit.

¶ 17    In response to the State's apparent confusion about what the abbreviation "PC" stands for, defendant argued in his reply brief:

> "The problem is that there is a significant chance that if [defendant] files a postconviction petition, it will be deemed a successive petition. The half-sheet, the circuit court computer and the report of proceedings all indicate this filing was a post-conviction petition. The State cannot point to any place in the record where the court called the filing a petition for relief from judgment."

Defendant argued that "[t]he simplest and best course of action" at this point "would be to remand this case" so that the trial court could clarify what was intended. We must agree that, if we simply affirmed the dismissal with instructions, someone looking at the trial court's records would see a "PC" petition whose dismissal was affirmed on appeal. In addition, but for the supreme court's supervisory order, we were unclear whether this order was intended to be final. For the reasons

---

[7]In its Statement of Facts, the State's brief stated: "On its half-sheet, the court stated: 'motion to reconsider denied.' " This sentence omitted any reference to the prominent and circled abbreviation "PC" that precedes the word "motion." Only in a later footnote does the State's brief acknowledge the presence of the "PC" abbreviation.

more fully explained below, we vacate and remand for further proceedings consistent with this opinion.

¶ 18                                    A. September 23, 2019, Order

¶ 19    Defendant's first claim is that reversal is required by the trial court's failure on September 23, 2019, to give him any chance to respond before dismissing his "letter." For the following reasons, we find that the dismissal of the claims stated in his petition was harmless.

¶ 20    Both the United States and Illinois Constitutions guarantee an individual's right to procedural due process. *People v. Stoecker*, 2020 IL 124807, ¶ 17; U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Procedural due process requires that an individual be afforded "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re D.W.*, 214 Ill. 2d 289, 316 (2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). A procedural due process claim presents a legal question reviewed *de novo*. *People v. Cardona*, 2013 IL 114076, ¶ 15.

¶ 21    Section 2-1401 of the Code provides a statutory mechanism for vacating final judgments older than 30 days. See 735 ILCS 5/2-1401 (West 2018). Section 2-1401 is a civil remedy that extends to criminal and civil cases, and a petition pursuant to it is essentially a complaint inviting responsive pleadings. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). "Illinois courts have recognized that basic notions of fairness dictate that a [section 2-1401] petitioner be afforded notice of, and a meaningful opportunity to respond to, any motion or responsive pleading by the State." *Stoecker*, 2020 IL 124807, ¶ 20.

¶ 22    The parties do not dispute that the trial court erred by dismissing defendant's section 2-1401 petition on the State's oral motion to dismiss without first giving defendant a chance to respond. However, our supreme court has specifically and expressly found that, where a motion to dismiss a defendant's section 2-1401 petition is granted without affording the defendant an

opportunity to respond, the error is harmless if the claims were "procedurally defaulted and patently incurable as a matter of law," such that "no additional proceedings would have enabled him to prevail" on those claims for relief. *Id.* ¶¶ 22-26.

¶ 23    Much like the petition in *Stoecker*, defendant's section 2-1401 petition was procedurally defaulted because it was filed well beyond the two-year limitation period, as defendant was sentenced in March 2015 and did not file his petition until September 2019. See 735 ILCS 5/2-1401(c) (West 2018) (a section 2-1401 petition "must be filed not later than 2 years after the entry of the order or judgment"). While an exception to the two-year limitation period exists where the petition challenges a void judgment, Illinois courts recognize only two types of voidness challenges: (1) where the court that entered the final judgment lacked personal or subject matter jurisdiction and (2) where the final judgment is based on a facially unconstitutional statute that is void *ab initio*. *People v. Thompson*, 2015 IL 118151, ¶¶ 29, 31-32. Defendant did not bring any claims in his petition that would fall under either category, so the specific claims that he made in his section 2-1401 petition were procedurally barred by the two-year limitation period.

¶ 24    Accordingly, under the clear and unequivocal rule established by our supreme court, we have no choice but to find that the trial court's error in not offering defendant a chance to respond on September 23, 2019, was harmless. See *Stoecker*, 2020 IL 124807, ¶¶ 22-26, 33. Although this particular error was harmless, we observe that defendant should have been given an opportunity to respond to the State's oral motion to dismiss and that, if defendant had been offered this chance at that time, to which he was no doubt entitled, our opinion could have stopped here.

¶ 25                                    B. October Order

¶ 26    Defendant next claims that the trial judge erred when he characterized the section 2-1401 petition as a postconviction petition without first admonishing defendant and affording defendant

an opportunity to withdraw or amend it. The State responds that the record does not show that the trial judge recharacterized defendant's petition. The State concedes in its brief to this court that the trial judge stated in open court that what the judge had ruled on was a postconviction petition. However, the State argues that this was a "lone" "misstatement" by the judge and not a characterization. In essence, the State is arguing that even though the trial judge referred to the filing as a postconviction petition, such reference did not constitute a legal characterization of the petition as a postconviction petition.

¶ 27 "[W]here a *pro se* pleading alleges a deprivation of constitutional rights cognizable under the Act, a trial court may treat the pleading as a postconviction petition." *People v. Shellstrom*, 216 Ill. 2d 45, 51 (2005). However, if the trial judge elects to recharacterize a filing as a postconviction petition under the Act, the trial judge must take the following three steps:

"(1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." *Id.* at 57.

In the case at bar, it is undisputed that the trial court did not undertake any of these three steps.

¶ 28 As for the State's argument that this was a mere "misstatement" by a trial judge, we observe that a trial judge's words normally carry considerable weight and consequences. For example, although the written order of the trial court is evidence of the judgment of the trial court, it is the trial judge's oral pronouncement that is the judgment of the court. *People v. Maxey*, 2015 IL App (1st) 140036, ¶ 46; *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87. As a result, when the oral

pronouncement of the court and the written order are in conflict, it is well established that it is the oral pronouncement that controls. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 62; *Maxey*, 2015 IL App (1st) 140036, ¶ 46; *Carlisle*, 2015 IL App (1st) 131144, ¶ 87; see also *People v. Lance*, 2021 IL App (1st) 181665, ¶ 23 n.4; *People v. Jackson*, 2016 IL App (1st) 133823, ¶ 77.

¶ 29    In addition, this did not appear to be a mere "misstatement." Previously, on September 23, 2019, the trial judge *had* misstated the basis of defendant's conviction and, on the basis of this misstatement, had orally ruled that defendant's "motion to set aside the guilty verdict which is really a plea and vacate sentence will be denied." Defendant moved promptly to reconsider, stating quite clearly that there had been no guilty plea. On October 25, 2019, the trial judge reviewed and ruled on defendant's motion to reconsider. We must presume that the trial judge read the motion before ruling on it. See *Canning v. Barton*, 264 Ill. App. 3d 952, 956 (1994) ("The purpose of a motion for reconsideration is to inform the court of any errors it has made and to provide an opportunity for their correction."). Apparently attempting to correct its prior misstatements, that defendant's conviction was based on a guilty plea and the petition was a motion to vacate a plea, the trial court stated: "All right. I previously ruled on post-conviction." The court then explained substantively why the petition was frivolous and without merit. Although the trial court did not use the words "frivolous" and "without merit," it nonetheless explained why the petition, which it characterized as a postconviction petition, was frivolous and without merit. The trial court emphasized that there were "numerous cases" to support the court's ruling.

¶ 30    It would be very hard to find that the trial court's apparently deliberate correction of a prior misstatement was, somehow, also a misstatement. It is particularly hard when every written entry of the ruling refers to it as the denial of a postconviction petition. The trial court's docket list states:

"post-conv petition denied." The half-sheet even states "PC" and is stamped "ENTERED" with the judge's stamp, indicating that it carries the force of a written order.

¶ 31     The State argues that, despite the judge's oral pronouncement that he considered this filing to be a postconviction petition, we should treat his oral pronouncement as a "misstatement" because it did not fully comport with the Act. This is a very slim reed on which to hang a ruling, in light of the facts (1) that the judge explained the petition's frivolous nature as the Act requires, (2) that he observed that defendant was making a constitutional claim as the Act requires, (3) that the ruling was made well within the 90-day limit that the Act requires, and (4) that his "ENTERED" stamp indicates that the half-sheet carried the force of a written order as the Act requires. See 725 ILCS 5/122-2 (West 2018) (the contents of the petition shall set forth the respects in which petitioner's constitutional rights were violated); *id.* § 122-2.1(a)(2) (within 90 days after the filing and docketing of a petition under the Act, the trial court must review the petition, determine whether or not it is frivolous, and issue a written order).

¶ 32     Probably recognizing the deficits of this argument, the State did not specifically argue that the dismissal lacked the requisites of a first-stage dismissal. Instead, to support its claim that the trial court took no action consistent with treating this petition as a postconviction petition, the State argued, "In this case, no counsel was appointed. No supplemental petition was filed. No 651(c) certificate was filed." Of course, none of these actions were taken. These actions are associated with a second stage dismissal, and this petition never got that far.

¶ 33     One might be tempted to argue that the October 29, 2019, half-sheet entry of "PC 2-1401 Petition Filed Transfer to Judge Martin for hearing/ruling OC 11-22-19" indicates that the trial judge meant that the petition was simply a section 2-1401 petition filed after or postconviction.

However, it is unclear what document this entry refers to, since the entry also indicates that the subject document is being transferred to another judge for yet another hearing.

¶ 34    Defendant also argues that the record below is so confusing that defendant will suffer real harm if he files a postconviction petition, in that he will most likely be held to the higher standard required for successive petitions, at least at the outset. See *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23 (only one postconviction petition is contemplated under the Act, and there are only two bases on which the bar against a successive postconviction petition under the Act are relaxed). It would be impossible to argue that the record below is clear. If we affirm the dismissal, all anyone who looks at the trial court records will see is the simple affirmance of a denial of a postconviction petition. See *Shellstrom*, 216 Ill. 2d at 55 ("the obstacles standing in the way of filing a successive postconviction petition are not easy to overcome"). Thus, even if we stated in this opinion that defendant's petition was not a postconviction petition, there is a real question of whether the trial court records, as they now stand, would even prompt a subsequent judge or attorney to look further. Remanding is not only necessary, as explained above under *Shellstrom*, it has the added benefit of permitting the trial court to correct its half-sheet, its docket entries, and its computer records and to state definitively whether it recharacterized the petition.. The State agrees that this was, in fact, a section 2-1401 petition that defendant filed. On remand, the trial court is ordered to enter entries on its half-sheet, docket list, and computer records which make clear whether it is treating the petition simply as a 2-1401 petition or recharacterizing it as a postconviction petition.  Since we are vacating and remanding for further proceedings, there is no need for us to determine whether the trial court did, or did not, recharacterize the petition.

¶ 35                                III. CONCLUSION

¶ 36 For the foregoing reason, this matter is vacated and remanded for further proceedings consistent with this opinion. There are only two ways to view the trial court's past actions: either (1) the trial court recharacterized the petition as a postconviction petition but erred by not providing the defendant with the required protections or (2) the trial court did not intend to recharacterize the petition but erred by then mistakenly declaring in open court and on every written entry of its ruling that the petition was a postconviction petition. Under either view, there was error in the trial court's past actions, which led to real harm. If the first view is correct, then defendant was denied the protections that he deserved. If the second view is correct, then the harm lies in the extra hurdle that defendant, as a *pro se* litigant, will unfairly face if he attempts to file a postconviction petition. A remand is necessary to eliminate confusion. We leave to the trial court to decide in the first instance which course to take, either: (1) recharacterize the petition *and* provide the required protections; *or* (2) state unequivocally that this is a section 2-1401 petition and correct all circuit court entries.

¶ 37 Vacated and remanded.

¶ 38 JUSTICE TAILOR, dissenting:

¶ 39 The parties agree that Clemons filed a section 2-1401 petition for relief from judgment. I agree with the majority's analysis and conclusion that the premature dismissal of Clemons's petition setting forth time-barred claims was harmless error (*supra* ¶¶ 19-24), and I would expressly affirm on that ground. In my view, an opinion that addresses that issue and that expressly clarifies that Clemon's petition was treated as a section 2-1401 petition and not a postconviction petition under the Act would suffice. But the majority chooses a different and unnecessary disposition, from which I must respectfully dissent.

¶ 40    At no point does the majority actually decide whether the circuit court recharacterized Clemons's petition as a postconviction petition under the Act. See *supra* ¶¶ 17, 26-34. Instead, the majority recounts various principles of law to suggest that something is wrong with the judgment.  If all the majority wants the circuit court to do is clarify its order and the docket, I do not see any need to belabor the matter by requiring the circuit court to conduct any additional proceedings when this court has the authority under Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994) to make those corrections. I do not believe that the record sufficiently demonstrates that the circuit court recharacterized Clemons's section 2-1401 petition as a petition under the Act and see no point in remanding this matter to the circuit court for any purpose, so I respectfully dissent.

¶ 41    As the majority acknowledges, the circuit court may, in its discretion, choose to recharacterize a section 2-1401 petition as a petition under the Act where the petition alleges a deprivation of a constitutional right. *Supra* ¶ 27 (quoting *Shellstrom*, 216 Ill. 2d at 51). But the circuit court is only obligated to admonish the petitioner if the circuit court recharacterizes the petition.

¶ 42    Here, the record does not sufficiently demonstrate that the circuit court did so. When the circuit court initially denied Clemons's petition, it referred to the filing as a "letter" and a "motion to set aside the guilty verdict which is really a plea." While these statements were inaccurate, nothing in the circuit court's statements suggests that it treated the filing as a postconviction petition for relief under the Act. Further, the circuit court's subsequent statement in addressing Clemons's motion to reconsider that it "previously ruled on post-conviction" can be read two ways. It could be an accurate statement as Clemons's petition was indeed a post-conviction collateral challenge to his conviction, albeit not one brought under the Act. Or, if

the circuit court was referring to a petition filed under the Act, then the statement was inaccurate as the record demonstrates the circuit court had viewed Clemons's petition as an untimely motion to withdraw a guilty plea, which Clemons undoubtedly never filed. While the majority asserts that an oral pronouncement controls over a conflicting written order (*supra* ¶ 28), that principle does not apply here because the circuit court did not unambiguously state on the record that Clemons's postconviction petition under the Act was denied. Instead, it is equally plausible that the circuit court was simply acknowledging that the case was in a post-conviction posture and the circuit court—faced with a motion to reconsider—had previously ruled on the petition. In my view, it is clear the circuit court did not recharacterize the petition and was not required to provide the *Shellstrom* admonishments.

¶ 43        The majority attempts to divine from a somewhat confusing record whether the circuit court exercised its discretion and recharacterized Clemons's petition as a postconviction petition under the Act. It relies in part on a notation in the docket list that states "post-conv petition denied," as well as a handwritten notation—the letters "PC," which are circled—on the half-sheet. The majority appears to decide that the shorthand notations of "post conv" and "PC" must refer to a postconviction petition under the Act, as opposed to the more generic meaning of post-conviction, which refers to the procedural posture of the case itself. That sort of factfinding strikes me as troubling, especially because the circuit court's October 29, 2019, order purporting to transfer a section 2-1401 petition to the presiding judge for a ruling also contains the handwritten notation "PC," which is circled, suggesting that the repeated references in the record to "post-conviction" do not have one specific meaning.

¶ 44        Clemon's concern, echoed by the majority, that the record's references to "postconviction" might lead a future circuit court judge to treat a later-filed postconviction petition

as a successive postconviction petition is not entirely unreasonable. I would note, however, that this court's Rule 23 order in Clemons's direct appeal appears in full in the record along with our mandate, and was part of the record when the circuit court judge ruled on the section 2-1401 petition. Our opinion today will undoubtedly be filed with the clerk of the circuit court, and also become part of the record. Regardless, we could simply clear up any potential future confusion by exercising our power under Supreme Court Rule 366(a) and order that the circuit court's dismissal of Clemons's petition was a dismissal of a section 2-1401 petition and not a postconviction petition under the Act. If we took that approach, any judge faced with a future postconviction petition for relief under the Act would observe, from a review of the record that will include our judgment and reasoning, that Clemons need not satisfy the cause-and-prejudice test in order to pursue relief under the Act.

¶ 45          I would affirm the circuit court's dismissal of Clemons's section 2-1401 petition and enter an order clarifying that his September 18, 2019, petition was and shall be treated as a petition under section 2-1401 and not an initial postconviction petition under the Act. I would further order that if Clemons files a petition under the Act in the future (or has filed a petition under the Act since the filing of the petition at issue in this case), for purposes of that petition only, it shall be treated as an initial petition under the Act and that Clemons will not be subject to the heightened pleading standard applicable to a successive postconviction petition under the Act.

¶ 46          Therefore, I must respectfully dissent.

**_People v. Clemons_, 2023 IL App (1st) 192169**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-21385(03); the Hon. Steven J. Goebel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Peter Sgro, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |